The bill in this cause was filed to restrain the defendant, among other things, from engaging in the business of a real estate agent, salesman or broker in the city of Hoboken, in violation of his agreement with complainant. The complainant is engaged in the business of a real estate broker in the city of Hoboken, employing a great number of salesmen. On June 15th, 1923, the defendant entered into the employ of complainant under a written agreement. Article 1 thereof is as follows:
"1. That the party of the first part hereby agrees to hire and employ the party of the second part from date of June 15th, 1923, to June 15th, 1924."
By the sixth paragraph the compensation of defendant was fixed at forty per cent. of the commissions collected on transactions for the sale of property negotiated through the efforts of the defendant. In the eighth paragraph it is provided that the complainant "shall have the right to discharge the party of the second part [defendant] at any time when it appears to the satisfaction of the party of the first part [complainant] that he has been dishonest, incompetent, inefficient," c. The material clauses are the ninth, tenth and eleventh paragraphs, which are as follows:
"(9) That in the event of the termination of this contract for any cause, the party of the second part shall not enter into the business of real estate agent, salesman or broker, in any of its branches in the territory referred to hereinbefore or/and in any territory to which he may be subsequently assigned, at any time during the term of this contract, or for a period of one year after the termination of this contract.
"(10) In the event that either the party of the first part or the party of the second part does not desire to renew this contract at the expiration of the term herein provided, notice in writing must be given on or before April 15th, 1924, by the one to the other, informing him that such contract is not to be renewed, otherwise it shall be construed that said contract shall be renewed for an additional term of one year.
"(11) That the said party of the second part shall not enter into the employ of any other real estate agent or broker within the territory herein referred to during the term of this employment for the term of one year after the termination of this contract." *Page 112 
The defendant entered into the service of the complainant under this contract and continued therein down to August 10th, 1926, when he resigned as a director of the complainant, and voluntarily quit the service of the corporation.
On or before April 15th, 1924, the defendant did not give notice that the contract would not be renewed. Likewise, he did not give notice before April 15th, 1925, that the contract would not be renewed. On April 14th, 1926, he gave notice to the vice-president of the complainant that the contract would not be renewed. He said he desired to be a director of the complainant, and the vice-president told him that he would endeavor to have him made a director. Thereupon, he withdrew his notice, and the notice was never delivered to the corporation. Shortly thereafter, at a weekly meeting of the salesmen and other assistants of the complainant corporation, the defendant was almost unanimously recommended to the corporation for election as a director. It seems to have been the policy of the complainant to take the views of these employes before electing a director, as the directors are usually selected from the salesmen. Almost immediately thereafter a stockholders meeting of the complainant was held and the by-laws were changed increasing the number of directors from six to seven, and thereupon the defendant was elected a director. This all happened in April of 1926. The defendant attended the meetings of the stockholders and directors regularly until August 10th, 1926, when, in an open meeting of the directors, he presented his resignation, which was accepted. He then retired from the directors' meeting, and after the meeting was over he asked to have his broker's license returned to him, which was done; and the president of the complainant asked the defendant to turn over the books of the complainant in his possession, which the defendant did.
Within a week thereafter the defendant opened a real estate office in close proximity to that of the complainant, and was carrying on business in competition with the complainant when this bill was filed.
The first point made by the defendant is that even though the defendant continued in the employ of the complainant, *Page 113 
the contract was not continued after June 15th, 1925, because there is no provision in the contract for giving notice of its discontinuance after April 15th, 1924. I do not agree with the defendant in this. The parties, by their conduct, acquiesced in a renewal of the contract from year to year, and all its provisions, so far as applicable, remained in force. It is plain, from the conduct of the parties, that they intended that the contract in its entirety should run from year to year. Passino
v. Brady Brass Co., 83 N.J. Law 419; Jones v. Manhattan HorseManure Co., 91 N.J. Law 406; Lyons v. Pease Piano Co.,92 N.J. Law 592; Pfeil v. Christian Feigenspan, Inc., 97 N.J. Law 3;Styles v. Lyons (Conn..), 86 Atl. Rep. 564, 565; Tatterson
v. Suffolk Manufacturing Co., 106 Mass. 56. And the parties to the contract so construed the same, because the defendant continued from year to year, after the first year, on the same terms, and, in April, 1926, deemed it necessary to give notice before April 15th, 1926, to terminate the contract within a year. The rule of law is that where a contract is ambiguous the interpretation placed upon it by the parties by their conduct and actions and treatment of the same, will receive the same construction by the court. Counsel will find numerous cases on this subject.
The second point urged by the defendant is that he was not made a director because he was not a stockholder. It seems that at or before the time of his election as a director, Mr. Kislak, the president of the corporation, directed one of the bookkeepers to issue a share of stock to the defendant, but by some oversight this was not done. It does not appear that the defendant ever asked for it. The par value of this one share of stock is but one dollar, and it is perfectly plain that the reason it was not issued and delivered to the defendant was due to an oversight of both parties, and it, apparently, was not called to the attention of the complainant until the defendant filed his answer. He did not quit the employ of the company because this share of stock had not been delivered to him.
He also says in his answer that the complainant was guilty of unfair and unethical conduct in business, without stating *Page 114 
the particulars. On the hearing he endeavored to show that in one transaction the defendants had procured a sale from an Italian client, with the usual commission of three and one-half per cent. and that the complainant sought to charge five per cent., and that the client became very much angered over it. The facts, however, show that the commissions in this case would amount to about $225 or $230 at three and one-half per cent., and that the Italian offered one of the salesman $50 as a gift, and the salesman and the Italian were told that the employes were not authorized to receive gifts, and they therefore fixed the commission at $300, which was about $75 more than if charged at the three and one-half per cent. rate. This sum of $300 was somewhat less than the five per cent. rate, and it is testified that where sales are made or consummated outside of Hoboken, in some cases they charge five per cent., but that there was no hard and fast rule that the rate should be three and one-half per cent., although that rate customarily obtained in Hoboken. The property of this Italian, as I recall it, was located outside of the city of Hoboken. I am satisfied that the defendant did not leave the complainant on account of this transaction.
His mother died in March, 1926, and left him quite an estate, the amount of which has not been testified to, but is said to have been large; and afterwards he desired to invest some of it with the complainant, but the complainant did not care to take the investment.
There was also some testimony that differences arose from time to time as to the amount he was entitled to receive as commissions on certain sales. The contract provides that he shall receive forty per cent. of the commissions collected on transactions for the sale of property negotiated through his efforts. In some cases the contracts were negotiated not solely through his efforts, in which cases the forty per cent. commission was divided among him and the other agents. I take it that all these matters had been amicably adjusted, and a division made among those who joined in the negotiation of the contracts. The complainant received no part of the forty per cent. This did not induce the defendant to leave. *Page 115 
He also says that under the terms of his contract he was to devote his whole time and attention to the business of real estate broker, and that prior to his entering into the employment of complainant he had been engaged as a master plumber in the city of Hoboken, and that the business was continued after he entered the employment of the complainant, and that Mr. Kislak, the president of the corporation, had ordered him to do plumbing work around in various buildings managed or controlled by the complainant, and that the complainant paid these bills. This business was being conducted in Hoboken. Mr. Kislak says that he understood that when the defendant entered into their employ he turned over his plumbing business to his employes and that he was not aware of the fact that the defendant himself was conducting the business. But apart from all this, the defendant did not object to doing plumbing work (if he was doing it), and never made any objection on the ground that he was entitled to devote all his time to the business of the complainant. This was never urged as a ground for defendant quitting the business, and I think the first time the charge appeared was in his answer.
There were a number of other more or less minor transactions where differences arose, but were amicably adjusted, none of which, apparently, caused the defendant to leave the complainant's employ. I think the reason why he abandoned the employment was because he desired to go into an independent business on his own account.
The fact that he was elected a director did not, in any sense, change the contract of employment theretofore existing. It did not increase his emolument, but was rather in the nature of an honor bestowed upon him.
The conclusion I have reached is that the defendant should be enjoined. The restriction was reasonable, both as to time and territory (the city of Hoboken), for the protection of the complainant's business. The defendant had access to the data of the complainant and to its customers and methods of doing business.
The last question is whether the defendant should be restrained until June 15th, 1928, on the theory which the complainant *Page 116 
advances, that the contract provides for a hiring for recurring periods of one year, terminable upon notice given on or before April 15th in each year. While a technical construction of this contract might lead to this view, I am unable to reach the conclusion that this was the intention of the parties. In the ninth paragraph of the contract the language is
"that in the event of the termination of this contract for any cause, the defendant shall not enter into business of a real estate agent, etc., at any time during the term of this contract, or for a period of one year after the termination of this contract."
Spreading this language over the eighth paragraph, which gives authority to the complainant to discharge the defendant at any time under certain conditions, if the complainant discharged him it would terminate the contract, and he would not be authorized to enter into the business on his own account for one year thereafter. In the eleventh paragraph, which contains the prohibition against entering into the employ of other real estate agents or brokers, the restriction runs "for the term of one year after the termination of this contract." While his abandonment of the contract may not in strictness be treated as a termination of the contract under its language, yet, in view of the language in the eighth, ninth, tenth and eleventh paragraphs of the agreement, it is fair to assume that the parties meant one year from the date when the defendant left the employ of the company, that period of one year being regarded as sufficient to protect the complainant in the enjoyment of its good-will.
In this case, the contract which the defendant signed was one one of the blank forms used by the complainant, and evidently prepared by its counsel. It is the rule that where a contract is ambiguous it should be construed most strongly against the party preparing it, or employing the words concerning which doubt arises. Fletcher v. Inter-State Chemical Co., 94 N.J. Law 332;affirmed, 95 N.J. Law 543. *Page 117