MYRTLE ELIZABETH SIMS, Dependent of FRANK CALVIN SIMS, v. TRUSCON STEEL COMPANY, Employer, and LONDON GUARANTEE & ACCIDENT COMPANY, Insurer, Appellants.—126 S. W. (2d) 204.

Division Two, March 15, 1939.

*Watson, Ess, Groner, Barnett & Whittaker* for appellants.

*N. R. Fisher* and *E. H. Gamble* for respondent.

WESTHUES, C.—This case was submitted to this court at the September Term, 1937. An opinion, by TIPTON, J., was adopted; a

motion for rehearing sustained, and the case was again submitted in January, 1939. In their motion for rehearing appellants state the following:

"In its opinion the court, in reference to appellants' contention that the original contract of employment made by Frank Calvin Sims, deceased, with Truscon Steel Company, was made in Kansas and not in Missouri, stated that it did not believe that appellants had placed the proper construction on the evidence. As a basis for this holding the court set out evidence in the opinion as follows:

" 'McElroy testified as follows:

" 'Q. He (Sims) told you as soon as he finished that job he would go over? A. That he would get somebody to finish it and go over and start.

" 'Q. Well, where did you give him his final instructions for going to work in Wyandotte County? . . . A. I hired him to work over there at my office in Missouri.'

"From the above it appears that this Court held that the original contract between Sims and Truscon Steel Company was made in Missouri, as shown by the above quoted evidence."

It is asserted by appellants that the answer to the last question, above quoted, was stricken from the record by the commissioner who heard the case, and therefore the conclusion of the Compensation Commission, that the contract was made in Missouri, was not based upon that evidence. Appellants earnestly insist that the claimant did not produce evidence to sustain a finding of the commission that the contract was made in Missouri. We have carefully re-read the record. The examination of the witness McElroy was interrupted frequently by objections, which in turn were followed by discussions between the commissioner hearing the case and the attorneys representing the parties. Omitting these discussions and some of the questions and answers, the gist of the witness's evidence, which was not stricken out, pertinent to the point in question, is as follows:

"A. I personally talked to Mr. Sims, because I was interested in locating him permanently with Truscon Steel. . . .

"Q. (By Mr. FISCHER): Was that before he actually went to work in Wyandotte County? A. Prior.

"Q. And where did that personal conversation between you and Sims take place? A. In the Labor Temple at Fourteenth and Woodland.

"Q. In whose office there? A. If I remember correctly, my office was full and I took him out in the hall by the elevator and talked to him there. . . .

"Q. (By Mr. FISCHER): What I am referring to now, is your conversation that you had with Frank Sims in the Labor Temple in your office prior to him going on this job; now what was that conversation? . . .

"A. He told me he had a little contract he would like to finish. After I talked to him, he told me to get somebody to finish it and he would go over.

"Q. He told you as soon as he finished that job, he would go over? A. That he would get somebody to finish it and go over and start.

"Q. Later on did he go over? A. He did go over, yes. . . .

"Q. (By Mr. FISCHER): Well, now after you talked to him in your office in the Labor Temple in the evening, as you previously related, did you talk to Mr. Sims again, either personally or by phone before he went to work? A. No."

The above evidence fully justified a finding, by the commission, that the contract was made in Missouri. The answer of the witness, quoted in the original opinion, which was stricken out, was merely a restatement in substance of what the witness had testified to previously.

Other points made by appellants in their motion for rehearing were fully answered in the original opinion which we adopt as the opinion of the court at this time. It reads as follows:

"This is an appeal of an order of the Circuit Court of Jackson County, Missouri, affirming an award of the Missouri Workmen's Compensation Commission. The award was in favor of Myrtle Elizabeth Sims, widow of Frank Sims, deceased, for $11,076, payable at $20 per week. Sims was in the employ of the Truscon Steel Company, and it is admitted that he was killed in the course of his employment during the construction of the Wyandotte County High School building in Kansas City, Kansas, on August 24, 1936.

"Appellants' only contention is that the Workmen's Compensation Commission of Missouri was without jurisdiction because the injury causing Sims' death occurred in Kansas, and the contract of employment was not made in Missouri.

"Findings of fact by the commission are conclusive on appeal if supported by competent evidence. [Sec. 3342, R. S. 1929; Adams v. Continental Life Ins. Co., 340 Mo. 417, 101 S. W. (2d) 75, and cases cited therein.]

"It is appellants' contention that the original contract of employment was made in Kansas and not in Missouri, and even if they are mistaken in that contention, they further contend that at the time of Sims' death he was working under a new contract which was entered into by correspondence between Sims in Kansas City, Kansas, and the Truscon Steel Company in Chicago, Illinois.

"The record shows that on January 31, 1936, Harry Pascoe, district erection manager of the Truscon Steel Company went to the Labor Temple in Kansas City, Missouri, and asked Perrin B. McElroy who represented the iron workers in the building trades council for the states of Missouri and Kansas, if he could furnish him four good

ornamental iron workers for the Wyandote County High School job in Kansas City, Kansas, and that he wanted the men to start work the following Monday morning, February 3, 1936. The job was a W. P. A. project and McElroy knew the iron workers would have to be residents of the State of Kansas. He told Pascoe that he could get the men and mentioned that one of them would be Sims, now deceased. Pascoe, knowing Sims by reputation, requested McElroy to advise him the following day if he could get him to go on the job, which McElroy agreed to do. McElroy telephoned from the Labor Temple to Sims at his home in Kansas City, Kansas, and offered him the job, but Sims replied that he had a 'little job' to finish first. That evening Sims went over to the Labor Temple in Kansas City, Missouri, and had a personal conversation with McElroy who told him that he hoped to be able to finally place him as a 'key man' with the Truscon Steel Company.

"It is appellants' contention that Sims did not unconditionally accept the job, but did so only on condition that McElroy get someone else to finish the 'little job' that Sims spoke of, and inasmuch as McElroy did not get someone else to finish the job, the contract was not accepted until Sims started to work on the job in Kansas the following Monday.

"If appellant's construction of the evidence is correct, then, of course, the contract of employment of Sims was not completed in Missouri, but was completed when he started to work the following Monday. '. . . before a contract is completed or binding upon the parties thereto, there must have been a definite proposal made on the one hand, and an acceptance thereof on the other, and that such acceptance must have been unequivocal, unconditional and without variance between it and the proposal made.' [Chapin v. Cherry, 243 Mo. 375, l. c. 401, 147 S. W. 1084. See, also State ex rel. Equitable Life Assur. Soc. of United States v. Robertson, 191 S. W. 989; Egger v. Nesbit, 122 Mo. 667, 27 S. W. 385.] Appellants contend that the offer was accepted by the performance of the act, that is, Sims accepted the proposal by starting to work the following Monday, as it was the kind of proposal that could be accepted either by agreeing to perform the act or by performing the act. [Daggett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S. W. (2d) 1036.] But in viewing the evidence most favorable to respondent, as we must do since the commission found for her, we do not believe that appellants have placed proper construction on it.

"McElroy testified as follows:

" 'Q. He (Sims) told you as soon as he finished that job he would go over?' A. 'That he would get somebody to finish it and go over and start.'

" 'Q. Well, where did you give him his final instructions for going

to work in Wyandotte County? . . .' A. 'I hired him to work over there at my office in Missouri.'

"Immediately after this conversation, McElroy wrote the government engineer on the Wyandotte County job that Sims would report for work the following Monday morning. On Saturday, February 1, 1936, Pascoe telephoned McElroy at the Labor Temple and asked him if he had obtained the men and if Sims was among them, to which he replied that he had and that the men, including Sims, would report for work Monday.

"We think the evidence was sufficient to support the finding that the contract of employment was accepted in Missouri and was, therefore, a Missouri contract. [Daggett v. Kansas City Structural Steel Co., supra.]

"Appellants contend that even though the contract of employment entered into on January 31, 1936, was a Missouri contract, this contract was abrogated and a new contract entered into between Sims and the Truscon Steel Company, evidenced by a series of letters.

"The work of the iron workers was very irregular. Sims worked from February 3, 1936, until February 13, 1936. He did not work again until the third day of March of that year. Ott, the 'key man' on the job, returned to Chicago and left Sims in charge during his absence. On February 18, 1936, Pascoe wrote Sims the following letter:

" 'Henry Ott has returned from Kansas City and informed the writer that he left with you blue prints in connection with the Wyandotte High School job.

" 'He also informed me that you were to handle the erection of sash which will be required on the job during his absence, and until such time as it will become necessary to employ a larger crew of men.

" 'In connection with this job would it be possible for you to handle same—at the present time we are very busy in Chicago and we can use Henry very nicely in this territory. If you believe that you can handle this job satisfactorily for us we would like to give you the opportunity to do so and the writer upon receipt of word from you will come to Kansas City at a later date to make the necessary arrangements for you to handle this work.

" 'I would like to have you study these drawings very carefully. As you know this job is somewhat complicated and I want you to be reasonably sure that you can handle this job before replying to this letter. In the meantime, however, you are to take care of any sash to be erected per arrangements with Henry Ott, and after receiving your reply we will decide as to how this job will be handled.

" 'I understand from Henry that arrangements have been made whereby you are to be paid for any work performed on the erection of steel windows by the N. P. Severin Co., and should we decide to

have you handle this work we will make the necessary arrangements immediately to change this method of paying as it would be more desirable for us to pay you direct from this office.'

"On February 25, 1936, Sims wrote Pascoe to the effect that he would be very glad to handle the above mentioned job. By subsequent correspondence, it was arranged that Sims was to act as timekeeper and paymaster, and to pay for unanticipated needs of his employer and later to be reimbursed. The subject of wages and working conditions were never discussed as they were covered by the regulations of the trade union of which Sims was a member. As an iron worker he received $1.25 an hour and was limited to 30 hours a week. Acting as 'key man' he received $1.50 an hour and was allowed to work 40 hours a week. After he became a 'key man,' he continued to do the work of an iron worker, but in addition to doing this work he also acted as superintendent. Twice during this time he did work for the Truscon Steel Company on other jobs.

"As previously stated, appellants contend that the above correspondence terminated the original contract of Sims' employment, while respondent claims that the original contract of employment was not terminated but that Sims was only given a promotion under the original contract.

"In the case of Adams v. Continental Life Ins. Co., supra, deceased entered the services of the insurance company in South Dakota. His duties were connected with the company's realty in that state, North Dakota, Montana and Nebraska. In 1931 the company transferred him from South Dakota to St. Louis, Missouri, where his duties were enlarged so that he covered the company's realty in thirty-three states. His salary was changed to the Missouri payroll and the employer's compensation policy was amended to eliminate coverage under the South Dakota Compensation Act. In 1932 he went on a trip for the company to South Dakota, and while on this trip he was accidentally killed. We held that the change in his duties and the changing of his place of work did not create a new contract; that the status of employer and employee was governed by the South Dakota contract and the Missouri Compensation Commission did not have jurisdiction of the claim.

"In the case of Pettiti v. Pardy Construction Company, 103 Conn. 101, the contract of employment was made in Connecticut and the employee was sent to Massachusetts as foreman of laborers in building a school building. There he had a disagreement with the superintendent who laid him off temporarily as a disciplinary measure. He returned to Connecticut and five days later he was taken back on the job and continued as before. When the weather became cold the superintendent placed him in charge of the furnaces at extra pay, and while attending to them he met with an accident which resulted in his death. The employer contended that the Connecticut

contract of employment was terminated and that a new contract was made in Massachusetts, and that the law of Massachusetts governed. The Supreme Court of Connecticut held that the original contract of employment governed and that compensation should be allowed under the laws of Connecticut. In passing on the case that court said:

" 'There was only one contract of employment, and a change of the work done, or the compensation paid the employee, would not change the relation existing between this employer and employee. The doing of additional work for increased pay was an incident of the contract of employment. To hold otherwise might, in some cases, where the day's work was distributed among several lines of work, create as many different contracts of employment, and with every new piece of work outside the particular work for which the employee was employed a new contract would be formed. The work done at one time would be under the Connecticut Compensation Act, while just succeeding its performance, the next work done would be under another State Compensation Act. The result would be a situation intolerable to both employer and employee.'

"We are of the opinion that there was only one contract of employment in the case at bar. The fact that Sims was given additional duties and additional pay did not change the relationship existing between employer and employee. The additional work was an incident of the contract of employment. Nor do we believe the Truscon Steel Company thought that the duties of Sims were fully expressed in the correspondence. Subsequent to this correspondence, Sims worked on two other of their jobs, one of which was in Kansas City, Missouri, yet there is nothing in the correspondence that suggests that he was to work for his employer on any except the Wyandotte County High School job.

"Section 3310, Revised Statutes 1929, provides:

" 'This chapter shall apply to all injuries received in this state, regardless of where the contract of employment was made, and also to all injuries received outside of this state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide.'

"There is nothing in the evidence to show that the parties contracted that the Missouri Compensation Act should not apply.

"We are of the opinion that the cases relied upon by appellants are not in point; we will only discuss a few of them.

"In the case of Kennedy Van Saun Mfg. & Eng. Corp. v. Industrial Commission, 189 N. E. 916, employee was originally hired by a New York corporation. Later, this company formed a subsidiary corporation organized under the laws of Illinois. Employee was transferred to the Illinois corporation, for which he worked exclusively thereafter. The Illinois Supreme Court held that the transfer operated to sever the relation of employer and employee between the

New York corporation and the deceased, but it did allow a recovery against the Illinois corporation. In that case we have a different employer than the one under the original contract, whereas in the case at bar there was no change of employer.

"In the case of Ludberg v. Lackawanna Corp., 284 N. Y. Supp. 718, the court affirmed in favor of claimant for the death of her husband, who had been working for defendant, a New York corporation, in Indiana. The corporation closed its Indiana office and transferred the employee to Buffalo, New York, where it made a new contract of employment with him. It gave him a new kind of work and sent him on temporary work in New Hampshire, where he was fatally injured. The court held that the New York Compensation Act applied.

"Appellants contend that to construe our Compensation Act to be broad enough in its terms and intent to apply to the facts at bar would render it unconstitutional under Section 1 of Article IV of the Constitution of the United States, which provides that full faith and credit shall be given in each State to the public acts . . . of every other State, and also that it would violate the provisions of the Fourteenth Amendment of the Constitution of the United States. Appellants base their contention on the assumption that the contract of employment in existence at the time of Sims' fatal accident was either a Kansas or Illinois contract and not a Missouri contract. We would agree with appellants if this contract were either a Kansas or Illinois contract, as Missouri has no extra-territorial jurisdiction. New York Life Ins Co. v. Head, 234 U. S. 149. But we have ruled that at the time of Sims' death he was working under a Missouri contract. Even if the accident that caused his death did occur in Kansas, the Missouri Workmen's Compensation Act would apply, because the Truscon Steel Company was a major employer operating under that act.

"In the case of Daggett v. Kansas City Structural Steel Co., supra, we held that Section 3310, supra, which provides that the Workmen's Compensation Act applies to injuries received out of this State where the contract of employment was made in this State, does not violate either the full faith and credit or the due process clauses of the Constitution of the United States.

"As the contract of employment in the case at bar was made in Missouri, we hold that the Missouri Workmen's Compensation Commission had jurisdiction to determine the claim of respondent.

"From what we have said, it follows that the action of the circuit court approving the award should be affirmed. It is so ordered." *Cooley* and *Bohling, CC.,* concur.

PER CURIAM: The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.