[Civ. No. 11171.   First Appellate District, Division One.—December 19, 1939.]

BENGUET CONSOLIDATED MINING COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and FREDERICK L. KNOUSE, Respondents.

W. H. Lawrence and Burbank & Laumeister for Petitioner.

Everett A. Corten, Keith & Creede and Edward D. Leonard for Respondent.

PETERS, P. J.—This is a proceeding to review an award of compensation made by the Industrial Accident Commission in favor of Frederick L. Knouse against the Benguet Consolidated Mining Company, his employer.

The respondent commission, after a lengthy hearing, found that Knouse, while employed as a mine superintendent by petitioner in the Philippine Islands, was injured in the course and scope of his employment, on January 25, 1937. The evidence shows that Knouse was shot in the face and hands by a subordinate employee. There is no dispute that the injuries received were serious, disfiguring, and have resulted in permanent disability. Although the injury occurred in the Philippine Islands, the commission found that it had jurisdiction

because the ''contract of employment was made and entered into in the State of California''.

Based on his disability rating as shown by the evidence, the commission awarded Knouse $25 a week for 207 weeks, amounting in all to $5,175; found that the employer was entitled to a credit for $532.14 already paid to Knouse; and awarded Knouse further medical care for the injuries received, for the balance of his life.

On this petition no challenge is made of the amount of the award or of the findings that the injury occurred in the scope and arose out of the employment. Petitioner contends that the commission had no jurisdiction under the California law to make an award against it; and, further, that if the California statutes purport to confer such jurisdiction, they are unconstitutional. The points raised by petitioner are neither new nor novel. As will later appear, both points have been determined adversely to the contentions of petitioner by the Supreme Court of this state and of the United States.

The evidence shows that Knouse was born in North Carolina in 1901. After reaching maturity he engaged in the mining business or attended mining schools in various states of the United States, and, on occasion, in foreign countries. In 1931 he moved to California where he remained until 1933, in which year he went to the Philippines under contract with petitioner. During his two-year residence in California he spent the major portion of his time at Nevada City. He testified that, upon arriving in California in 1931, he approached a Mr. Eye, who was then the San Francisco representative of petitioner, to see if he could secure employment with that firm. He was not at first successful. He also testified that Nevada City was his residence in 1933 when the contract was finally signed; that while he lived there between 1931 and 1933 he registered there as a voter and voted in various elections; that he has never registered or voted elsewhere; that, although he has moved about the world in the mining business, he prefers Nevada City as a place to live; that after being injured in the Philippines in 1937 he returned to the United States; that his port of entry was New York City; that he went from there to North Carolina to visit his family; that from there he went to Baltimore for medical treatment; that then he returned to North Carolina to continue certain treatments recommended by his doctors; that he then started west, stopping off for

short periods in Denver and Salt Lake City; that he finally returned to Nevada City where he arrived in April, 1938; that he has resided there ever since.

The record shows that in October, 1933, Knouse signed a written contract of employment with the mining company in San Francisco, a Mr. M. H. Gerry, Jr., signing as the representative of the employer. This contract provided that Knouse was employed by the mining company for a period of two years, commencing upon his arrival in the Philippines, in the position of mine shift boss at a salary of $250 per month. The contract, although it provided that the employment was not to commence until the employee arrived in the Philippines, also provided that the employee was to receive one-half month's salary to cover the time he was en route to the Islands, and the employer agreed to pay all traveling expenses. It was also provided that if the contract were extended for an additional year, making three years in all, upon completion of the contract the employer agreed to furnish the employee with transportation to San Francisco or Seattle. This contract was signed in San Francisco on October 28, 1933. The exact status of Gerry, who signed on behalf of the company, and of Mr. Eye, his predecessor, is a matter of some dispute. The record shows that these men had offices in the Hobart Building in San Francisco, the office rent being paid by Benguet Mining Company, and an affiliated mining company; that Gerry received a substantial salary from the company; that the name of the company was on the door of the office until removed apparently in 1937. It also appears that Gerry, and, before him, Eye, represented the mining company in many transactions. They signed various employment contracts as the representative of the company on instructions from the head office at Manila. The very contract signed by Knouse is headed: "Benguet Consolidated Mining Co. Head Office, Manila, P. I." Immediately below this appears: "San Francisco Office: 1106 Hobart Building, Telephone Garfield 2538." On instructions from the head office, these representatives purchased various materials and machinery for the company and caused them to be shipped to the Islands. These articles were paid for by Gerry by his personal check, and he reimbursed himself by drawing on the company's bank account maintained in the Wells Fargo Bank, San Francisco. The representative

also at one time had (and the officers were not sure but that he still had) a power of attorney to represent the company in connection with its gold shipments to California. It also appears that the company is mainly engaged in the gold mining business, and has been engaged in that business since 1903; that it now produces about $450,000 bullion a month; that during that entire period its entire gold product has been shipped to San Francisco except for two trial shipments to New Zealand and Vancouver; that since the passage of the Gold Act by Congress it must ship all of its gold to the states, and in fact it ships it all to the San Francisco mint; that the money paid by the mint for the gold is deposited in the Wells Fargo Bank; that shareholders of the company living in the United States are paid dividends by checks drawn on the Wells Fargo Bank. It also appears that Gerry possesses the power to draw on the Wells Fargo Bank account.

After signing the contract in October of 1933, Knouse went to the Islands, and took up his duties as mine shift boss. During the first two-year period of the contract he received various increases in salary, and various promotions. The contract was then extended for the third year contemplated by its terms, and during this period Knouse was also promoted with consequent increase in salary and change of duties. At the end of the third year, Knouse continued to work for petitioner under circumstances hereafter related in detail. He was injured on January 25, 1937. He received certain medical, surgical and hospital care in the Islands, and then it was determined that he should return to the states for further medical treatment. In April of 1937, before leaving, Knouse and the company signed what purported to be a release, by the terms of which in consideration of a recited sum of a little over $6,000, Knouse purported to release the company from all liability growing out of the injury. However, this entire sum was not received by Knouse. The larger portion of the money was for doctor and hospital bills paid by the company, for some salary paid Knouse while ill, and for further medical expense in the states. The commission found that the employer was entitled to a credit against the award in the sum of $532.14. The amount of that credit is not challenged in this petition. Apparently the commission believed that the balance of the $6,000 was paid out for expenses properly chargeable against the em-

ployer under the California Workmen's Compensation Act. If the California law is applicable, this purported release was, of course, invalid.

█ The basic problem presented is whether, under this statement of facts, the California Industrial Accident Commission had jurisdiction to award compensation for the injury of which complaint is here made.

Section 5305 of the Labor Code (formerly sec. 58 of the Workmen's Compensation Act) provides:

"The commission has jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this State in those cases where the injured employee is a resident of this State at the time of the injury and the contract of hire was made in this State." It will be noted that the section purports to require that, to confer upon the commission jurisdiction for injuries received outside the state, the employee must be a resident of California at the time of injury, and the contract of hire must be made in this state. Little need be said as to the first requirement—residence in the state at the time of injury. In the first place, the word "resident" as there used cannot possibly mean that the injured employee must be physically living in the state at the time of injury, because the statute presupposes that the employee is out of the state when injured. The word "resident" as there used must be construed to be synonymous with domicile. (*Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26, 34 [192 Pac. 1021, 12 A. L. R. 1190].) The facts already recited in this opinion tend to indicate that respondent Knouse was in fact a resident of California at the time of his injury. He testified that from 1931–1933 he resided in Nevada City; that he registered and voted there; that he preferred to live there. After his injury, and after securing medical attention in the east and visiting his family in North Carolina, he returned to Nevada City, the place he preferred to live.

█ However, even if this evidence does not support the inference that Knouse was in fact a resident of California at the time of his injury, that would not be a bar to the jurisdiction of the commission. By various decisions it has been established that the provision purporting to limit this provision of the act to residents of California is an unconstitutional discrimination, and that the effect of such unconstitu-

tionality is to extend the benefits of the act to nonresidents, if the contract of hire was entered into in this state. This point was first directly presented in *Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26 [192 Pac. 1021, 12 A. L. R. 1190] (writ of error dismissed 255 U. S. 445 [41 Sup. Ct. 373, 65 L. Ed. 723]). In that case the majority of the court expressly held that the effect of the unconstitutionality of the clause in question was to extend its benefits to non-resident citizens of other states. Justice Wilbur, in a concurring opinion, interpreted the majority opinion as follows (p. 49) : ''I agree with the majority of the court in holding that, notwithstanding the language of the statute with reference to residents, by virtue of the federal constitution a *nonresident of California, if a citizen of the United States,* is entitled to the same remedies as a resident, and for that reason the Industrial Accident Commission had jurisdiction of the complaint of a resident of California, and would also have jurisdiction of a similar complaint by a nonresident, and that there is, therefore, no such discrimination as is prohibited by the federal constitution.'' (Italics ours.)

Whatever doubt may exist as to this phase of the problem was set at rest by the case of *Alaska Packers Assn.* v. *Industrial Acc. Com.*, 1 Cal. (2d) 250 [34 Pac. (2d) 716] ; Id., 294 U. S. 532 [55 Sup. Ct. 518, 79 L. Ed. 1044]. In that case, as both opinions state, the employee was a *nonresident alien.* Both courts held that, because the contract of hire was entered into in this state, the benefits of the California act were extended to such nonresident alien. In the decision of the Supreme Court of California it was held that the requirement that the employee must be a resident of California ''has been nullified by the decision in *Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 184 Cal. 26 [192 Pac. 1021, 12 A. L. R. 1190] . . . which held that the Federal Constitution extended the benefits of the act to nonresidents also''. (1 Cal. (2d) 255.) The United States Supreme Court, in its opinion (294 U. S., at p. 538), pointed out that, under the California decisions, it had been held that the ''privileges and immunities clause of the Federal Constitution prevented giving any effect to the requirement that the employee be a resident'', and that the benefits of the act were available to a nonresident alien.

■ From these cases it follows that, under section 5305 of the Labor Code, if the contract of employment in existence at the time of the injuries was in fact entered into in California, Knouse, having initiated proceedings in this state, is entitled to the benefits of the California act.

It is conceded that the original contract was signed by Knouse for himself and by Gerry as the representative of the mining company in San Francisco in 1933. The first contention of petitioner on this phase of the case is, that the contract of 1933, summarized above, was not a contract of employment entered into in California, but was a mere agreement to hire upon arrival in the Philippines; that no relation of employer-employee between Knouse and the petitioner ever existed in California; that the negotiations between Knouse and Gerry were similar to those between an independent employment agency and an employer in another state; that under proper principles, under such a state of facts, California has no jurisdiction. To sustain its contention petitioner relies almost entirely on ''Comment: a'' to section 398 of the Restatement of the Conflict of Laws.

Section 398 of the Restatement provides: ''A workman who enters into a contract of employment in a state in which a Workmen's Compensation Act is in force can recover compensation under the Act in that state for bodily harm arising out of and in the course of the employment, although the harm was suffered in another state, unless the Act provides in specific words or is so interpreted as to apply only to bodily harm occurring within the state.'' This section is, of course, a statement of the general principle enunciated in section 5305 of the California Labor Code, *supra*. Following this section in the Restatement, appears ''Comment: a'', relied upon by petitioner, which reads as follows: *''Employment through agency.* The case of employment through an employment agency in one state, *where the entire business is carried on in another state,* and the applicant is merely sent to the principal office to report, is specially treated. In such a case, the relation is regarded as established not by the action of the agency, but by the workman reporting for work at the principal office of the business, the transaction at the employment office not being regarded as *definitive hiring.* In that case, the Compensation Act of the state where the workman reports for duty governs compensation.'' (Italics ours.)

In the Alaska Packers case, *supra*, the Supreme Court of California commented on this very section and pointed out (p. 261) that the comment "does not reflect the general rule, but rather an exception to or modification of the general rule announced" in section 398, *supra*. After quoting section 398 the court pointed out that "the general rule as suggested, and not a comment noting an exception or modification of the general rule, would be the more persuasive".

However, whether the rule stated in "Comment: a" is or is not to be followed, as an exception to the general rule stated in section 398, we are of the opinion that the exception has no application to the instant case. Here the record discloses that a "definitive hiring" took place in California, not through an independent employment agency, but through Gerry, a duly authorized agent of the employer in this state. The "entire business" of petitioner was not carried on in the Philippines. For many years the major product of the petitioner has been shipped to, and sold in, California. A large portion of its purchases have been made through Gerry. Petitioner maintains banking connections in this state, and pays some of its shareholders by checks drawn on the local state bank. Gerry's powers and duties have been discussed earlier in this opinion. He was clearly acting as the agent of petitioner, and petitioner was clearly doing a material portion of its business in this state.

Although the contract of hire provided that the term of employment did not commence until the employee's arrival in the Philippines, this provision does not determine whether a "definitive" contract of employment was entered into in this state. It is of some significance that the contract provided not only for transportation to the Philippines, but also that the employee should collect a portion of his salary while traveling to the Islands.

Under all these circumstances it must be held that the "contract of hire" of October, 1933, "was made in this state" within the meaning of section 5305 of the Labor Code. (See, also, *Globe Cotton Oil Mills* v. *Industrial Acc. Com.*, 64 Cal. App. 307 [221 Pac. 658].)

The petitioner next contends that even if the October, 1933, contract of employment was made in this state, that it expired within two years, or at most three years, and that at the time of injury the employee was working under a

contract made in the Islands. The commission found that the contract under which the employee was working at the time of injury—January 25, 1937—was entered into in the State of California.

As already held, the original contract of hire was made in California in October, 1933. This contract, by its terms, was to run for a period of two years, but contemplated its extension for another year. There is no serious dispute that the contract was extended for the third year. Knouse was injured after working a little over three years. The real dispute centers around the question as to whether, at the end of three years, the parties entered into a new contract of employment in the Philippines, or whether, prior to the expiration of the three-year contract, the parties mutually agreed to an extension of the term of the original contract made in California.

The record shows that during the three-year period Knouse received various increases in salary and promotions. █
The law is well settled that mere changes in salaries or duties made during the term of the contract, does not abrogate the original contract, and that the original contract remains in force in spite of such changes. Thus, it has been held, that where a contract of employment for a definite term is entered into in one state, and the actual work is performed in another state, and the employee is injured in the latter state, the state where the contract was entered into has jurisdiction, even though changes in salary and duties were agreed upon in the state where the injury occurred. The basis of these decisions is that the original contract is still in force and effect in spite of the changes agreed upon in the state where the injury occurred. (*Selser* v. *Bragmans Bluff Lumber Co.*, (La. App.) 146 So. 690; *Pettiti* v. *T. J. Pardy Const. Co.*, 103 Conn. 101 [130 Atl. 70]; see, also, *Magnolia Compress & Warehouse Co.* v. *Davidson*, (Tex. Civ. App.) 38 S. W. (2d) 634; *Texas Employers' Ins. Ass'n* v. *Volek*, (Tex. Com. App.) 69 S. W. (2d) 33; *Sims* v. *Truscon Steel Co.*, 343 Mo. 1216 [126 S. W. (2d) 204].)

From these cases it is quite clear that the original contract of two years, extended to three years, was still in effect in spite of the changes in duties and salary agreed upon in the Philippines. It is undisputed that Knouse arrived at Antamok, Philippine Islands, on November 27, 1933. The con-

tract would normally have expired November 27, 1936. Knouse was injured after the expiration of the three-year contract, on January 25, 1937.

Respondent commission takes the position that both by operation of law, and by act and intention of the parties, the original contract was extended, so that in January, 1937, Knouse was in fact still working under the contract made in California in 1933.

The contention that the original contract of 1933 was still in force and effect in 1937 by operation of law, is based on the provisions of section 2012 of the Civil Code as that section read until 1937, when it was substantially transferred to the Labor Code, section 3003. Section 2012, as it read prior to 1937, provided:

"Where, after the expiration of an agreement respecting the wages and the term of service, the parties continue the relation of master and servant, they are presumed to have renewed the agreement for the same wages and term of service." This section apparently embodies the well-settled rule expressed in 18 Ruling Case Law, page 533, section 47, as follows:

"If persons have contracted for the performance of certain services for a definite period at a fixed rate, and the employment continues beyond the period agreed upon, in the absence of any new contract it will be presumed that the employment continued under the same contract and upon the terms originally fixed." (See *Conner* v. *Garrett,* 65 Cal. App. 661 [224 Pac. 786], where the rule stated in Ruling Case Law, *supra,* was quoted and approved; see, also, *Henkel* v. *J. J. Henkel Co.,* 212 Cal. 288 [298 Pac. 28]; *Magnolia Compress & Warehouse Co.* v. *Davidson,* (Tex. Civ. App.) 38 S. W. (2d) 634; *J. I. Kislak, Inc.,* v. *Muller,* 100 N. J. Eq 110 [135 Atl. 673].)

In the instant case it is not necessary to rely on the doctrine that the contract was extended by operation of law. The evidence shows that prior to the expiration of the three-year term the parties by mutual consent agreed to continue in effect the contract entered into in San Francisco in 1933.

Respondent Knouse testified that, in October, 1936, before the expiration of the three-year term, he had a talk in Manila with Mr. Duggleby, vice-president of petitioner, con-

cerning his contract; that he told Duggleby that his contract
was about to expire; that "Mr. Duggleby said continue on
with your contract, working under the same contract"; fur-
ther, that Duggleby told him to "continue on with this con-
tract"; to continue on "under the terms of that contract
. . . to continue under this original contract". Knouse fur-
ther explained that the reason for continuing the old contract
in effect was to assure him his vacation. The 1933 con-
tract had provided that at the end of three years the em-
ployee was entitled to a trip to the states. Knouse explained
that at the end of the three years it would have been dif-
ficult to put a new man in charge of the property, but that
it was contemplated the construction would be completed
shortly thereafter and then it would be easy for him to take
his vacation. This evidence clearly supports the implied find-
ing of the commission that prior to the expiration of the
California contract, the parties, by mutual consent, agreed
to extend that contract, and to continue the employment under
that contract. The evidence also shows that petitioner itself
apparently believed the California contract was still in effect
at the time of the injury to Knouse. When the employer
and employee entered into the purported release agreement
after the injury, the president of the company, John W.
Haussermann, furnished the employee with an itemized list
of expenditures and a letter explaining them. In the letter
it was mentioned "that under the contract with Mr. Knouse"
he was entitled to transportation to San Francisco, but that,
since the employee desired to go to New York, the company
"agreed to waive" that provision, and to pay the cost of
transportation to New York. Obviously this part of the let-
ter had reference to the clause in the California contract,
above mentioned, entitling the employee to transportation to
the states at the end of the 1933 contract. It is at least a
reasonable inference that in March, 1937, two months after
the injury, Mr. Haussermann believed the California contract
of 1933 was still in effect.

Petitioner's last contention is that if section 5305 of
the Labor Code, *supra,* be interpreted to confer jurisdiction
over petitioner by reason of the facts herein recounted it
is unconstitutional. This contention requires but little com-
ment. The Alaska Packers case, *supra,* has definitely estab-
lished that over contracts of employment entered into in

this state, at least where the employer is doing business in this state, California has a definite and vital interest, and that, in such cases, the state may constitutionally assume jurisdiction over awards for injuries occurring outside this state. The latest case interpreting the California law is *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, 306 U. S. 493 [59 Sup. Ct. 629, 83 L. Ed. 940], affirming 10 Cal. (2d) 567 [75 Pac. (2d) 1058], decided by the United States Supreme Court in March of this year. In that case the contract of employment had been entered into in Massachusetts, and the injury occurred in California, so that the case is not factually similar to the instant case. In discussing the general problem, however, the court stated (p. 632) : "Similarly the constitutionality of the provisions of the California statute awarding compensation for injuries to an employee occurring within its borders, and for injuries as well occurring elsewhere, when the contract of employment was entered into within the state, is not open to question. *Alaska Packers Association* v. *Industrial Acc. Com.*, 294 U. S. 532 [55 Sup. Ct. 518, 79 L. Ed. 1044] ; *New York Central R. Co.* v. *White*, 243 U. S. 188 [37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629] ; *Mountain Timber Co.* v. *Washington*, 243 U. S. 219 [37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642]."

In the Alaska Packers case, *supra*, the United States Supreme Court passed directly on the constitutionality of section 5305 of the Labor Code, and held the statute applicable in favor of a nonresident alien. The court stated (294 U. S. at p. 547) :

"The enactment of the present statute of California was within state power and infringes no constitutional provision. *Prima facie* every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum."

In the instant case the petitioner has not sustained the burden—in fact, the petitioner has not even pleaded a conflicting foreign statute or based any argument thereon. Its chief argument in this regard is that the record does not

show any interest of California in this contract because the employer was not doing business in this state. The record in this regard has already been fully summarized in this opinion. That summary shows that the company was doing a substantial portion of its business in this state, sufficient, at least to give this state a vital and definite interest in contracts of employment entered into in this state regardless of where the injuries might occur.

For the foregoing reasons the award should be, and hereby is, affirmed.

Ward, J., and Goodell, J., *pro tem.*, concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 15, 1940.