JACKSON, Justice.
In this case we consider whether an employment contract was “made in this State” when it was formed in South Carolina and allegedly modified in North Carolina. N.C.G.S. § 97-36 (2013). We conclude that the modification that occurred here did not alter the state in which the *316 contract was made. Accordingly, we reverse the decision of the Court of Appeals.
Plaintiff is a resident of Augusta, Georgia. In May 2000, U.S. Foods, Inc. extended plaintiff an offer of employment, which plaintiff accepted by signing the offer letter. According to plaintiff’s testimony, he was in Fort Mill, South Carolina, when he signed the offer letter. Subsequently, plaintiff began working for U.S. Foods as a delivery truck driver. Plaintiffs job responsibilities included driving a planned route with stops in Georgia and South Carolina, but no travel in North Carolina was involved.
As the result of a merger with another company in 2002, U.S. Foods ceased operating in the Columbia, South Carolina location where plaintiff was assigned. U.S. Foods then gave plaintiff the choice either to terminate his employment and receive a severance package or to have supervision of his employment transferred to Charlotte, North Carolina, or Lexington, South Carolina. Plaintiff elected to transfer to the company’s Charlotte division, and the transfer was approved by U.S. Foods’ Human Resources Department in Charlotte. Throughout the transfer, plaintiff was employed by U.S. Foods continuously. Thereafter, he performed the same job, and his title and responsibilities did not change. Plaintiff made deliveries to different customers after the transfer, and he earned more money because of a change in the way his pay was calculated. But although plaintiff’s supervision was transferred to Charlotte, plaintiff never had a route that involved any deliveries in North Carolina during his employment with U.S. Foods.
On 23 September 2009, plaintiff received a back injury during a delivery in Georgia. Plaintiff’s claim for benefits was accepted by defendants pursuant to the Georgia Workers’ Compensation Act, and plaintiff began receiving disability and medical compensation according to Georgia law. On 8 July 2011, plaintiff filed a claim for benefits with the North Carolina Industrial Commission. After a hearing on 17 April 2012, Deputy Commissioner Philip A. Baddour, III concluded that the Commission did not have subject matter jurisdiction over plaintiff’s claim. Plaintiff appealed to the Full Commission, which affirmed Deputy Commissioner Baddour’s ruling.
Plaintiff appealed, and in a divided opinion, the Court of Appeals reversed, holding that the Commission has jurisdiction over plaintiff’s claim. Burley v. U.S. Foods, Inc., 233 N.C. App. 286, 296, 756 S.E.2d 84, 90 (2014). The majority concluded that plaintiff’s transfer to U.S. Foods’ Charlotte division involved a modification of plaintiff’s employment *317 contract, id. at 295, 756 S.E.2d at 90, and that such a modification “may be a proper basis to find a contract is ‘made’ within North Carolina” for purposes of establishing the jurisdiction of the Commission pursuant to N.C.G.S. § 97-36, id. at 293, 756 S.E.2d at 88. Judge Dillon dissented, maintaining that modification of plaintiff’s existing contract, in light of the facts presented here, is insufficient to confer jurisdiction upon the Commission. Id. at 296, 756 S.E.2d at 91 (Dillon, J., dissenting). Based upon the dissent, defendants appealed to this Court as of right pursuant to N.C.G.S. § 7A-30(2).
On appeal defendants argue that once an employment contract has achieved an identifiable situs, that situs is not changed by a subsequent modification of the contract in another state. Defendants therefore contend that, notwithstanding the alleged modification in the case sub judice, plaintiffs employment contract was not made in North Carolina and does not establish the Commission’s jurisdiction pursuant to section 97-36. We agree.
Generally, appellate review of the Commission’s decisions is limited to “whether any competent evidence supports the Commission’s findings of fact and whether [those] findings . . . support the Commission’s conclusions of law.” McRae v. Toastmaster, Inc., 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (alterations in original) (quoting Deese v. Champion Int’l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)). But “the Commission’s findings of jurisdictional fact are not conclusive on appeal, even if supported by competent evidence.” Perkins v. Arkansas Trucking Servs., Inc., 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000) (citing, inter alia, Lucas v. Li’l Gen. Stores, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976)). Accordingly, this Court must review the evidence and make findings of fact independently. Id. at 637, 528 S.E.2d at 904 (quoting Lucas, 289 N.C. at 218, 221 S.E.2d at 261). “The Commission’s conclusions of law are reviewed de novo." McRae, 358 N.C. at 496, 597 S.E.2d at 701 (citing Grantham v. R.G. Barry Corp., 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997), disc. rev. denied, 347 N.C. 671, 500 S.E.2d 86 (1998)).
Section 97-36 specifies when an employee may be entitled to compensation for an accident that occurs during employment outside of North Carolina. This statute states in pertinent part:
Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, *318 then the employee or his dependents or next of kin shall be entitled to compensation (i) if the contract of employment was made in this State, (ii) if the employer’s principal place of business is in this State, or (iii) if the employee’s principal place of employment is within this State ....
N.C.G.S. § 97-36. Because the only issue addressed by the dissenting opinion concerns whether the Court of Appeals correctly concluded that plaintiff’s employment contract was “made in this State,” Burley, 233 N.C. App. at 296, 756 S.E.2d at 91; see also id. at 296 n.1, 756 S.E.2d at 87 n.1 (majority), we consider only that basis for compensation pursuant to section 97-36, see N.C. R. App. P. 16(b). “Under North Carolina law, a contract is made in the place where the last act necessary to make it binding occurred.” Tom Togs, Inc. v. Ben Elias Indus. Corp., 318 N.C. 361, 365, 348 S.E.2d 782, 785 (1986) (citing Goldman v. Parkland of Dallas, Inc., 277 N.C. 223, 227, 176 S.E.2d 784, 787 (1970)); see also Thomas v. Overland Express, Inc., 101 N.C. App. 90, 96, 398 S.E.2d 921, 925-26 (1990), disc. rev. denied, 328 N.C. 576, 403 S.E.2d 522 (1991).
Although this case involves a matter of first impression in North Carolina, courts of several other states that have considered similar factual situations long have held that a modification of a contract did not change the location where the contract was made. In Sims v. Truscon Steel Co., 343 Mo. 1216, 126 S.W.2d 204, cert. denied, 307 U.S. 646, 59 S. Ct. 1045, 83 L. Ed. 1526 (1939), a company hired a worker via a contract made in Missouri, but later argued that a new contract was entered into by correspondence between the employee, who was then working in Kansas, and the employer’s Illinois office. Id. at 1220, 126 S.W.2d at 206. The Missouri Supreme Court rejected this contention, concluding that, although the correspondence resulted in “additional duties and additional pay” for the employee, there still was “only one contract of employment”: the original contract made in Missouri. Id. at 1224, 126 S.W.2d at 208. Similarly, in Selser v. Bragmans Bluff Lumber Co., 146 So. 690 (La. Ct. App. 1933), a Louisiana appellate court determined that a “change in [the employee’s] position and the increase of his salary” that occurred in another jurisdiction “in no way abrogated or set aside” the remaining terms of the original contract. Id. at 696. Furthermore, in Benguet Consolidated Mining Co. v. Industrial Accident Commission, 36 Cal. App. 2d 158, 97 P.2d 267 (1939), a California appellate court concluded that a three-year contract of hire originally made in California “was still in effect in spite of the changes in duties and salary agreed upon in the Philippines” and remained binding even after subsequent mutual agreements made in the Philippines extended the worker’s *319 employment beyond the time specified in the original contract. Id. at 167, 97 P.2d at 272. Consistent with these decisions, Larson's Workers’ Compensation Law states that “[o]nce the contract has achieved an identifiable situs, that situs is not changed merely because the contract is modified in another state, as when there is a change in salary or other benefits made in the second state.” 9 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 143.03[4], at 143-22 (2012) (citing United Airlines, Inc. v. Indus. Comm’n, 96 Ill. 2d 126, 449 N.E.2d 119 (1983); Crawford v. Trans World Airline, 27 N.J. Super. 567, 99 A.2d 673 (1953); Tobin v. Rouse, 118 Vt. 40, 99 A.2d 617 (1953)). We find this authority persuasive.
Kuzel v. Aetna Insurance Co., 650 S.W.2d 193 (Tx. App. 1983), which plaintiff references and which the Court of Appeals cited, does not contradict this result. The court in Kuzel concluded that, based upon the specific facts before it, the initial agreement regarding the plaintiff’s employment in that case “was no more than preliminary negotiations,” while “[a] contract [was] established [in another state] when agreement [was] reached on all terms, and the preliminary agreements [were] . . . incorporated into the final offer and acceptance.” Id. at 195. As a result, Kuzel did not involve a modification of an existing contract, but rather concerned preliminary negotiations culminating in a subsequent final written employment agreement. Accordingly, the court’s analysis in Kuzel is not persuasive in the case sub judice.
Although the Fifth Circuit in Kilburn v. Grande Corp., 287 F.2d 371 (5th Cir. 1961), concluded that a modification may create a new contract, that decision was based in part upon the premise that, because the employee’s “salary was to be paid on an hourly basis,” thus indicating a less than “ ‘permanent’ type of employment,” whatever employment contract existed “had life on a pay-period-to-pay-period basis, and ... a new contract was impliedly made each time that [the employee] reported to work and was given work following a pay period.” Id. at 373. Because North Carolina law looks to “the final act necessary to make [the contract] a binding obligation,” Thomas, 101 N.C. App. at 96, 398 S.E.2d at 925, and does not imply the creation of a new contract after each pay period, we find Kilbum unpersuasive.[1] See also, e.g., Murray *320 v. Ahlstrom, Indus. Holdings, Inc., 131 N.C. App. 294, 296-97, 506 S.E.2d 724, 726 (1998) (citing Thomas and concluding that a contract for employment was complete when the plaintiff accepted the employer’s offer in North Carolina, even though the plaintiff completed the necessary paperwork in another state, where he was assigned to perform his work).
Ultimately, section 97-36 authorizes compensation pursuant to North Carolina law if an individual’s employment contract was “made” in North Carolina — the statute does not include the word “modified.” After interpreting this statute in light of its plain language and upon consideration of decisions from other jurisdictions, we conclude that section 97-36 does not apply to a contract initially made in another state and subsequently modified in North Carolina.
Here the evidence in the record establishes that when plaintiff began working for U.S. Foods, his employment contract was not made in North Carolina. After being hired in South Carolina in 2000, plaintiff worked continuously for U.S. Foods and never left the job until he was terminated following his injury. Plaintiff’s 2002 transfer involved administrative changes, new customers, and increased pay, but his job title and responsibilities did not change. Plaintiff’s supervisor stated that plaintiff had the “[s]ame job” following the transfer. In addition, although plaintiff’s pay eventually increased by a substantial amount, much of the increase occurred between 2004 and 2005, long after the 2002 transfer at issue here. Plaintiff testified that he was not informed about this change in salary before its implementation, suggesting that it was not part of how he understood the transfer process at the time it was taking place. We decline to hold that this internal transfer of supervision, which essentially allowed plaintiff to continue working for U.S. Foods in the same capacity throughout the merger, established a new employment contract. Accordingly, the decision of the Court of Appeals is reversed.
REVERSED.

. Moreover, we note that the original agreement in Kilbum was never reduced to writing by the parties, which further distinguishes Kilbum from the instant case. The lack of a written agreement led the Fifth Circuit to find the absence of “an enforceable contract of employment for any period of time in existence when [the employee] moved to [the other state].” Kilburn, 287 F.2d at 373.