STEVE F. HOJNACKI, Employee, Plaintiff,
v.
LAST REBEL TRUCKING INC., Employer, NONINSURED, and
CINDY BIVINS, Individually, and ROBY L. HENDERSON, Individually, and/or COMTRAK LOGISTICS, Employer, and
GREAT WEST CASUALTY COMPANY, Carrier, Defendants.
No. COA09-460.
Court of Appeals of North Carolina.
Filed January 5, 2010.
This case not for publication
Patterson Harkavy LLP, by Leto Copeley and Narendra K. Ghosh, for plaintiff-appellant.
Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Martha W. Surles and Larissa M. Bixler, and Cerwin Law Firm, PA, by Todd Cerwin, for defendants-appellees.
MARTIN, Chief Judge.
Plaintiff appeals from an Opinion and Award of the North Carolina Industrial Commission concluding it had no subject matter jurisdiction and dismissing his claim for benefits. Because we conclude plaintiff was an employee of Last Rebel Trucking, Inc. ("Last Rebel") at the time of his injury, we reverse the Commission's Opinion and Award and remand for further proceedings consistent with this opinion.
The evidence presented before the Industrial Commission tended to show that defendant Comtrak Logistics ("Comtrak") is a Tennessee corporation in the business of transporting goods in interstate commerce via tractor-trailer trucks. In conducting this business, Comtrak often leases tractor-trailer trucks from independent contractors. In 2002, Comtrak entered into a lease agreement with defendant Last Rebel, a North Carolina business, to lease its tractor-trailer truck. Pursuant to this lease agreement, Comtrak was to pay Last Rebel for the use of its truck and the services of its driver. Comtrak was also to have complete control over the truck, which was operated under Comtrak's USDOT number. The lease agreement further provided that "[Last Rebel] or [its] employee, whose qualifications must be pre-approved by [Comtrak], shall operate the equipment for the hauling and transporting of freight pursuant to instructions from [Comtrak]." At this time, Roby Henderson operated the truck as Last Rebel's driver.
In 2004, Cindy Bivins ("Ms. Bivins"), the owner and president of Last Rebel, decided to purchase a new tractor-trailer truck which would in turn be leased to Comtrak. In need of a driver for the second truck, Ms. Bivins discussed with plaintiff the possibility of driving one of Last Rebel's trucks under the Comtrak lease.
After Comtrak was informed that plaintiff was a potential driver for one of Last Rebel's trucks, Comtrak dispatched plaintiff to Atlanta, Georgia to undergo its qualification and training procedures. Plaintiff drove Last Rebel's truck to Atlanta in order to have Comtrak's decals and equipment installed. In Atlanta, plaintiff filled out Comtrak's Application for Qualification, participated in Comtrak's training session, took a DOT physical, and received a manual that set forth Comtrak's rules and regulations. After successfully completing Comtrak's application and training procedures, plaintiff was dispatched by Comtrak from Atlanta to Charleston, South Carolina.
From that point on, plaintiff worked out of Comtrak's Charleston terminal. When Comtrak had a shipment of goods it needed plaintiff to haul, it would give him instructions as to where the goods needed to go and when they needed to be at the specified destination. Ms. Bivins had no part in determining which loads plaintiff was assigned to haul. However, Last Rebel, through either Ms. Bivins or plaintiff, did have the option to refuse an assignment.
The maintenance and cost of operating the truck were the sole responsibility of Last Rebel. Therefore, if any mechanical problems arose with the truck, plaintiff would drive to North Carolina so that Ms. Bivins could make the necessary repairs. Moreover, Last Rebel paid for all the fuel used by the truck. Comtrak did issue plaintiff a Comdata card in its name to purchase fuel while he was on his trips. However, any amounts charged by plaintiff to the card to purchase fuel were deducted from the amount Comtrak paid Last Rebel.
While on the trips, plaintiff would keep track of the miles he traveled on his trip sheets. He would also keep a daily log book in which he would indicate the dates and times at which he was operating the truck. He turned both the trip sheets and the log books in to Comtrak. Comtrak would then use the trip sheets provided by plaintiff to calculate Last Rebel's pay for the lease of its truck. Once Last Rebel received its settlement sheet from Comtrak, it would pay plaintiff accordingly. Plaintiff was compensated by Last Rebel at a rate of 32 cents per mile. This rate was decided upon by Ms. Bivins as one comparable to the rate Comtrak paid its company drivers.
In addition to compensating plaintiff for his work, Last Rebel paid for his occupational accident insurance policy. This particular policy was one obtained by Last Rebel through Comtrak's insurance carrier, Great West Casualty Company ("Great West"). Comtrak would pay the monthly premium for plaintiff's insurance policy directly to Great West, and the cost would in turn be deducted from Last Rebel's compensation.
Around midnight on the evening of 21 October 2004, at Comtrak's terminal in Charleston, South Carolina, plaintiff was involved in an accident while connecting a trailer to Last Rebel's truck. As plaintiff was trying to reach across from the tractor to the trailer to hook up the hoses, his foot slid and his right leg fell into the gap in the truck platform. His left leg remained on top of the platform. Two hours later, when plaintiff finally removed his leg from the gap, his arm, head, shoulder, and stomach were injured. Despite this, plaintiff cleaned himself and his truck, continued on his trip to Chattanooga, Tennessee, delivered the goods, and returned to Charleston, South Carolina. After this incident, plaintiff suffered from various medical problems. Plaintiff's accidentrelated medical expenses were paid for by Great West under the occupational accident policy purchased by Last Rebel. Plaintiff also received $500 per week in income replacement under this policy.
On 26 January 2007, plaintiff filed a Form 18 Notice of Accident to Employer and Claim of Employee, Representative, or Dependent.[1] After a hearing, a deputy commissioner issued an Opinion and Award granting plaintiff temporary total disability benefits in the amount of $526.79 per week from 23 October 2004 until the Commission orders otherwise, ordering Last Rebel and Comtrak to pay plaintiff's necessary medical expenses, ordering Last Rebel and Comtrak to pay plaintiff's attorney's fees, and imposing a civil penalty on Last Rebel for failure to maintain workers' compensation coverage. The deputy commissioner concluded that Last Rebel and Comtrak were joint employers of plaintiff, the Commission had jurisdiction over the entire claim, plaintiff was injured "out of and in the course of his employment with both Last Rebel and Comtrak," and plaintiff was disabled as a result of this injury. Last Rebel and Comtrak both gave notice of appeal to the Full Commission.
The Full Commission reversed the deputy commissioner, finding there was no evidence of an employeremployee relationship between plaintiff and Last Rebel. Instead the Full Commission found that plaintiff was the employee of Comtrak at the time of his injury. The Full Commission thus concluded that, pursuant to N.C.G.S. § 97-36, "the North Carolina Industrial Commission [lacked] subject matter jurisdiction over plaintiff's claim." Plaintiff appeals.
On appeal, plaintiff challenges the Full Commission's jurisdictional conclusions. Plaintiff first argues the Full Commission erred in concluding that he was not an employee of Last Rebel. We agree.
"To be entitled to maintain a proceeding for workers' compensation, the claimant must be, in fact and in law, an employee of the party from whom compensation is claimed." Youngblood v. N. State Ford Truck Sales, 321 N.C. 380, 383, 364 S.E.2d 433, 437, reh'g denied, 322 N.C. 116, 367 S.E.2d 923 (1988). "The question whether an employer-employee relationship existed is a jurisdictional one, and the finding of a jurisdictional fact by the Industrial Commission is not conclusive upon appeal even though there be evidence in the record to support such finding." Hughart v. Dasco Transp., Inc., 167 N.C. App. 685, 689, 606 S.E.2d 379, 382 (2005) (internal quotation marks omitted). Thus, this "[C]ourt has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record." Lucas v. Li'l Gen. Stores, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976).
Under N.C.G.S. § 97-2(2), an employee is one who is "engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written." N.C. Gen. Stat. § 97-2(2) (2009). This definition thus implies that "[t]he relationship of employeremployee is essentially contractual in its nature, and is to be determined by the rules governing the establishment of contracts, express or implied." Dockery v. McMillan, 85 N.C. App. 469, 473, 355 S.E.2d 153, 155, disc. review denied, 320 N.C. 167, 358 S.E.2d 49 (1987) (internal quotation marks omitted). Thus, we must determine whether the evidence contained in the record establishes a contract for hire between plaintiff and Last Rebel.
To form a valid contract, there must be an offer and an acceptance of this offer "in its exact terms." Chaisson v. Simpson, __ N.C. App. __, __, 673 S.E.2d 149, 159 (2009). Therefore, "a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." Northington v. Michelotti, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995). An employment contract, in its most general terms, is an agreement where "the employee surrenders to the employer the right to direct the details of his work, in exchange for receiving a wage." Woodson v. Rowland, 92 N.C. App. 38, 47, 373 S.E.2d 674, 679 (1988) (internal quotation marks omitted), aff'd in part and rev'd on other grounds in part, 329 N.C. 330, 407 S.E.2d 222 (1991).
Contracts, including employment contracts, need not be expressly stated or even written to be enforceable. See Snyder v. Freeman, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980). Instead, a contract implied in fact is equally as enforceable against the parties. Id. A contract implied in fact is one "where the intention of the parties is not expressed, but an agreement in fact. . . is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract." Id. (internal quotation marks omitted); see Archer v. Rockingham Cty., 144 N.C. App. 550, 557, 548 S.E.2d 788, 793 (2001) ("An implied contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding."), disc. review denied, 355 N.C. 210, 559 S.E.2d 796 (2002).
In the present case, the record does not contain a written employment agreement between plaintiff and Last Rebel. However, the record does contain testimony from plaintiff describing a series of conversations he had with Ms. Bivins in 2004. According to plaintiff, during these conversations, he agreed to drive Last Rebel's truck under its lease with Comtrak, and Ms. Bivins agreed to pay plaintiff 32 cents per mile in exchange for his services. Additionally, there is plenary evidence to show that plaintiff in fact drove Last Rebel's truck under the Comtrak lease from August 2004 until October 2004. During this time, Ms. Bivins instructed plaintiff to make money for her. In exchange for his services, Ms. Bivins paid plaintiff 32 cents per mile. As Ms. Bivins testified, this rate was decided upon by her as a rate comparable to the amount Comtrak paid its company drivers.
Moreover, Ms. Bivins asked plaintiff, as a driver of her truck, to call in daily. She testified that this was so she could make sure the truck was running properly. She further testified that plaintiff did in fact call her to check in during his time driving Last Rebel's truck. Additionally, as a term of her lease agreement, Ms. Bivins was required to make all necessary repairs on Last Rebel's truck. Therefore, she required plaintiff to bring the truck to her if there were any problems. Plaintiff indicated in his testimony that he did in fact drive the truck to North Carolina so that Ms. Bivins could make repairs.
From this evidence, it appears, at the very least, that there was an implied contract for hire between plaintiff and Last Rebel. The conduct of the parties clearly indicates that plaintiff agreed to drive Last Rebel's truck under its lease with Comtrak, to bring the truck to Ms. Bivins if there were any mechanical issues, and to keep Ms. Bivins informed of any problems with the truck. Thus, it is evident that plaintiff gave up his right to control these aspects of his work to Last Rebel. In exchange, Last Rebel compensated plaintiff with an adequate wage while also providing plaintiff with an occupational accident insurance policy paid for by Last Rebel. From the evidence in the record, this relationship appears to have existed from the time plaintiff began driving Last Rebel's truck until his injury on 21 October 2004. Thus, we conclude that an implied contract for hire existed between plaintiff and Last Rebel at the time of plaintiff's accident. Accordingly, under N.C.G.S. § 97-2(2), Last Rebel was an employer of plaintiff.
Last Rebel, in urging a different result, argues that it was impossible for Last Rebel to hire plaintiff to drive its truck because, according to the lease agreement between Comtrak and Last Rebel, Comtrak had "exclusive control, possession, and use" of Last Rebel's truck. In support of this argument, Last Rebel suggests that, had Comtrak not approved plaintiff, he would have had no further opportunity to work with Last Rebel due to the fact that all of Last Rebel's trucks were leased with Comtrak. Though it is true that Comtrak's approval was required in order for plaintiff to be able to drive Last Rebel's truck under the Comtrak lease, we do not agree with defendant's contention that this prohibited Last Rebel's from entering into an employment contract with plaintiff. Rather, we view this requirement as a condition precedent to the formation of the employment contract between plaintiff and Last Rebel. "A condition precedent is a fact or event, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance. . . ." Cox v. Funk, 42 N.C. App. 32, 34, 255 S.E.2d 600, 601 (1979) (internal quotation marks omitted). Here, both plaintiff's performance in driving Last Rebel's truck under the Comtrak lease and Last Rebel's performance in compensating plaintiff for this service were conditioned upon Comtrak's approval of plaintiff to drive Last Rebel's truck under the lease. Because Comtrak did approve plaintiff as a driver, the condition was met and the contract for hire between plaintiff and Last Rebel was formed.
Last Rebel also argues that it merely had a recruiting relationship and not an employment relationship with plaintiff. Citing Forgay v. North Carolina State University, 1 N.C. App. 320, 161 S.E.2d 602 (1968) and Godley v. County of Pitt, 54 N.C. App. 324, 283 S.E.2d 430 (1981), rev'd on other grounds, 306 N.C. 357, 293 S.E.2d 167 (1982), Last Rebel contends the evidence presented does not indicate that it exercised enough control over plaintiff's work to establish an employeremployee relationship. Instead, Last Rebel argues that plaintiff gave up the right to control his work to Comtrak, making it his employer and not Last Rebel.
However, Forgay and Godley are distinguishable from the present case. In Forgay, the plaintiff, through the Plan Assuring College Education program ("PACE program"), was hired for a summer job in the Town of Madison ("Madison"). Forgay, 1 N.C. App. at 321-22, 161 S.E.2d 603. According to the terms of the PACE program, a portion of the funds to pay plaintiff, which were supplied by the United States Office of Health, Education and Welfare, were given to North Carolina State University ("the University"). Id. at 321, 323, 161 S.E.2d at 603-04. Likewise, Madison deposited its share of the plaintiff's wages with the University. Id. at 326, 161 S.E.2d at 606. The University in turn issued the plaintiff a paycheck. Id. Beyond its role in dispersing plaintiff's pay, the University had the power to disqualify the plaintiff from participating in the program, but it had no authority otherwise to discharge him from his work. Id. Madison, however, controlled the plaintiff's daily work duties. Id. In light of this evidence, this Court concluded that the University was not an employer of the plaintiff. Id. at 327, 161 S.E.2d at 607.
Similarly, in Godley, the plaintiff was hired by Pitt County under a contract with the federal government's Community Employment Training program ("CETA") and assigned to work in the Town of Winterville ("Winterville"). Godley, 54 N.C. App. at 325, 283 S.E.2d at 431. Winterville controlled the plaintiff's daytoday activities. Id. However, Pitt County paid the plaintiff with federal CETA funds and did have the authority to fire him. Id. This Court, in holding that Pitt County was not plaintiff's employer, stressed that "[Winterville] alone benefitted from [the plaintiff's] services." Id. at 327, 283 S.E.2d at 432. It further concluded that "[Pitt] County's added power to assign and dismiss CETA workers, and its payment of compensation insurance premiums as required by the CETA program, are insufficient as a matter of law to distinguish this case from Forgay." Id.
In the previous cases, both the University and Pitt County had little contact with the plaintiffs beyond issuing their paychecks. Forgay, 1 N.C. App. at 326, 161 S.E.2d at 606; Godley, 54 N.C. App. at 325, 283 S.E.2d at 431. In contrast, Last Rebel had significantly more contact with and control over plaintiff's work activities. Though Comtrak controlled plaintiff's daily activities by dispatching him to haul loads, Last Rebel still controlled certain aspects of plaintiff's work. First of all, as stated above, Last Rebel retained the responsibility for the maintenance of the truck, and required its drivers, including plaintiff, to call in and report on the truck's condition. Secondly, even though Comtrak chose which loads plaintiff would take, Last Rebel retained the right to refuse a job offered by Comtrak. Finally, Last Rebel, through Ms. Bivins, was able to terminate plaintiff's work with Last Rebel by notifying Comtrak that it did not want plaintiff driving the Last Rebel truck.
Moreover, neither the University nor Pitt County in the previous cases received any benefit from the plaintiffs' services. Godley, 54 N.C. App. at 327, 283 S.E.2d at 432; see Forgay, 1 N.C. App. at 325-26, 161 S.E.2d at 605-06. In the present case, however, Last Rebel clearly received a benefit from plaintiff's work. Ms. Bivins testified that Last Rebel was paid for every mile plaintiff drove its truck. Accordingly, we conclude that Last Rebel did in fact enter into an implied contract for hire with plaintiff whereby plaintiff agreed to, and did in fact, surrender control of certain aspects of his work to Last Rebel in exchange for just compensation, making Last Rebel plaintiff's employer under N.C.G.S. § 97-2(2). Because we find Last Rebel to be plaintiff's employer under N.C.G.S. § 97-2(2), we need not address plaintiff's argument with regards to Last Rebel's employer status under N.C.G.S. § 97-19.1.
The Full Commission found "that the greater weight of the evidence does not establish an employment agreement between plaintiff and Last Rebel, but rather that plaintiff was an employee of Comtrak." Accordingly, it concluded, pursuant to N.C.G.S. § 97-36, that it did not have subject matter jurisdiction over plaintiff's claim. Because we find the Full Commission's finding with regard to plaintiff and Last Rebel's employment relationship in error, we reverse the Full Commission's Order and Award.
The plaintiff, in his remaining arguments, urges this Court to find both Last Rebel and Comtrak responsible as joint employers, and thus to conclude that the Full Commission has jurisdiction over plaintiff's entire claim. However, because the Full Commission concluded that Last Rebel was not plaintiff's employer, it necessarily did not reach the question of whether Last Rebel and Comtrak were plaintiff's joint employers. Accordingly, its Opinion and Award contains no conclusion as to the joint employer status of Last Rebel and Comtrak. Therefore, although this Court is not bound by the Full Commission's jurisdictional findings, Hughart v. Dasco Transp., Inc., 167 N.C. App. 685, 689, 606 S.E.2d 379, 382 (2005), we are unable to review a conclusion of law that has not been made. For the reasons stated above, we reverse the Full Commission's Opinion and Award and remand this case for proceedings consistent with this opinion. On remand, the Full Commission is to evaluate the evidence and determine whether Last Rebel and Comtrak were plaintiff's joint employers at the time of his injury, whether it has jurisdiction over plaintiff's entire claim, and to what, if any, award plaintiff is entitled for his injury.
Reversed and Remanded.
Judges Jackson and Ervin concur.
Report per Rule 30(e).
NOTES
[1] Plaintiff's Form 18 was filed more than two years after the date of his accident. On this issue, the deputy commissioner, citing McGhee v. Bank of America Corp., 173 N.C. App. 422, 618 S.E.2d 833 (2005) and Gore v. Myrtle/Mueller, 362 N.C. 27, 653 S.E.2d 400 (2007), found that plaintiff's claim was timely filed and that, in any event, Last Rebel and Comtrak were equitably estopped from asserting the two year time limitation as a defense. However, the Full Commission did not address the timeliness of plaintiff's claim, nor have the parties argued this issue on appeal. Accordingly, as this issue is not properly before this Court, we decline to address it and will proceed with the questions properly presented. N.C.R. App. P. 28(b)(6) (amended Oct. 1, 2009).