NO. COA13-860

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

VINCENT BURLEY,
        Employee, Plaintiff,

        v.                                    From the North Carolina
                                              Industrial Commission
                                              I.C. No. X52202
U.S. FOODS, INC., Employer,
and INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA, Carrier,

        and

GALLAGHER BASSETT SERVICES, INC.,
        Third Party Administrator,

        Defendants.


        Appeal by plaintiff from opinion and award entered 28 June

2013 by the North Carolina Industrial Commission.  Heard in the

Court of Appeals 12 December 2013.


        *The Sumwalt Law Firm, by Vernon Sumwalt, Mark T. Sumwalt,
        and Lauren Hester, for Plaintiff-Appellant.*

        *McAngus, Goudelock & Courie, P.L.L.C., by Raymond J.
        Williams, III, for Defendants-Appellees.*


        HUNTER, JR., Robert N., Judge.


        Vincent Burley ("Plaintiff") appeals from the 28 June 2013

opinion and award of the Full Commission of the North Carolina

Industrial Commission (the "Commission"), which concluded that the Commission did not have subject matter jurisdiction to hear Plaintiff's claim. Plaintiff argues the Commission had subject matter jurisdiction because a modification to his contract was approved by defendant U.S. Foods Inc. ("U.S. Foods") in Charlotte. We agree and reverse the Commission's opinion and award.

## I. Facts & Procedural History

On 8 July 2011, Plaintiff filed a claim for benefits with the Commission seeking compensation for a back injury suffered while working for U.S. Foods as a truck driver. U.S. Foods denied that North Carolina has jurisdiction over Plaintiff's claim, but admitted liability under the Georgia Workers' Compensation Act and is currently paying Plaintiff disability compensation under Georgia law. The matter came on for a hearing before Deputy Commissioner Philip A. Baddour, III ("Dep. Comm. Baddour") on 17 April 2012 and a written order was filed on 13 December 2012. The evidence presented at the hearing tended to show the following facts.

Plaintiff is a resident of Augusta, Georgia and was a 39-year-old truck driver at the time of his 13 December 2012 hearing before the Commission. In 1993, Plaintiff graduated

from truck driving school in Charleston, South Carolina, and obtained his commercial driving license from this course of study. Plaintiff has been a truck driver since graduating from this program.

U.S. Foods supplies and delivers food to restaurants, schools, sports venues, hotels, and many other types of businesses. U.S. Foods operates many distribution centers nationwide to supply "hundreds of thousands of customers" with its food products.

Plaintiff testified that U.S. Foods hired him as a delivery truck driver in May 2000. Plaintiff completed his initial hiring paperwork, including a driver's application, medical exam, and written driving exam, in Fort Mill, South Carolina. Plaintiff completed additional pre-hiring paperwork, including a road-test in Columbia, South Carolina and a drug-screening in Georgia. After completing his initial paperwork, U.S. Foods offered Plaintiff employment, and Plaintiff accepted the written offer. Plaintiff signed this paperwork in Fort Mill, South Carolina and was employed at-will.

Plaintiff drove a planned route as part of his employment. The route was concentrated around the Augusta area, with stops in Georgia and South Carolina. Plaintiff's truck and trailer

were stowed every day at a drop yard in Augusta. Plaintiff's route did not involve travel in North Carolina nor was his truck ever dropped in North Carolina.

U.S. Foods merged with another company, PYA Monarch, and the Columbia drop yard, where Plaintiff was assigned, was dissolved in 2002. Plaintiff testified that U.S. Foods offered to transfer supervision of his employment to either their Charlotte division or their Lexington, South Carolina division after the merger. Plaintiff chose to work for the Charlotte division because U.S. Foods arranged for his loaded delivery truck to be delivered near his Augusta home. Had Plaintiff chosen the Lexington division, he would have been required to drive his personal vehicle to retrieve his loaded truck in Lexington. Plaintiff's transfer to the Charlotte division was thereafter approved by U.S. Foods's human resources department in Charlotte.

Plaintiff's job title and responsibilities did not change after he was transferred to the Charlotte division from the Columbia division. Plaintiff stated that he was working the "same job, just a different division," although Plaintiff made deliveries to different customers and drove a different route. Plaintiff was also switched from an hourly weight-based pay

system to a component pay system. As a result, Plaintiff saw his pay increase from $400 to $500 a week under the weight-based system to between $900 and $1,400 per week under the component system. Plaintiff worked continuously for U.S. Foods for nine years, was never terminated or laid off, and never completed re-hiring paperwork during this period.

Plaintiff injured his back on 23 September 2009 while lifting a case of liquid milk during a delivery to a Sonic Drive-In in Evans, Georgia. U.S. Foods terminated Plaintiff's employment on 1 October 2009.

U.S. Foods's Charlotte division Transportation Manager Alton Abernathy ("Mr. Abernathy") also testified at the 17 April 2012 hearing. Mr. Abernathy stated that upon the merger of U.S. Foods and PYA Monarch, U.S. Foods "went to all the drivers [in the Columbia drop yard] that were being displaced . . . and offered them jobs" if they transferred branches. If Plaintiff rejected the transfer, he would have received a severance package. Mr. Abernathy further described the different pay systems between the Charlotte and Columbia divisions: Plaintiff's component pay system paid his commission on "pieces and stops and miles with a base and safety pay" rather than Plaintiff's prior pay system, which was based on weight carried.

Mr. Abernathy also described the Charlotte division's accommodations for its drivers, noting that the branch delivered drivers' loads to fifteen different sites, including Plaintiff's drop site in Augusta.

Plaintiff's transfer was approved and signed by three individuals: Doug Jolly, U.S. Foods's Transportation Manager at its Fort Mill division; Kim Dahl, a human resources officer at U.S. Foods; and Mel Smith, who provided final approval from the human resources department. U.S. Food's human resources department has been located in Charlotte since 4 December 2000, and both Kim Dahl and Mel Smith worked in the Charlotte office.

Lastly, U.S. Foods's Human Resources Coordinator, Rebecca Reed ("Ms. Reed"), testified at the hearing. Ms. Reed discussed the terms of Plaintiff's initial hiring contract, noting that U.S. Foods could modify the terms of Plaintiff's employment under the contract.

After hearing the foregoing evidence, Dep. Comm. Baddour concluded that the a modified contract does not constitute a contract "made" in North Carolina for purposes of the relevant jurisdiction granting statute, N.C. Gen. Stat. § 97-36 (2013). Dep. Comm. Baddour also concluded that the final act to create Plaintiff's employment contract did not occur in North Carolina.

Accordingly, Dep. Comm. Baddour ordered that Plaintiff's claim be denied for lack of subject matter jurisdiction. Plaintiff appealed to the Commission on 13 December 2012. The Commission heard the case on 22 May 2013 and issued an opinion and order on 28 June 2013 affirming Dep. Comm. Baddour's order. Plaintiff timely filed written notice of appeal with this Court on 2 July 2013.

## II. Jurisdiction & Standard of Review

Plaintiff's appeal from the Commission's opinion and award lies of right to this Court pursuant to N.C. Gen. Stat. § 7A-29(a) (2013). *Accord* N.C. Gen. Stat. § 97-86 (2013).

The only issue on appeal is whether the Industrial Commission had subject matter jurisdiction over Plaintiff's claim. At present, whether the Commission has subject matter jurisdiction over Plaintiff's case depends on whether a contract for employment was consummated in North Carolina pursuant to N.C. Gen. Stat. § 97-36. *See Parker v. Thompson-Arthur Paving Co.*, 100 N.C. App. 367, 369, 396 S.E.2d 626, 628 (1990) ("The jurisdiction of the Industrial Commission is limited by statute."). Plaintiff argues that (i) because U.S. Foods's Charlotte division approved Plaintiff's transfer to oversight by the Charlotte division from the Columbia division, Plaintiff's

contract was modified and (ii) because the "last act" of approving the modification occurred in Charlotte, the contract of employment was made in North Carolina.

"Appellate review of an award from the Industrial Commission is generally limited to two issues: (i) whether the findings of fact are supported by competent evidence, and (ii) whether the conclusions of law are justified by the findings of fact." *Chambers v. Transit Mgmt.*, 360 N.C. 609, 611, 636 S.E.2d 553, 555 (2006). "However, as to a jurisdictional question, this Court is not bound by the findings of fact of the lower tribunal. This Court has the duty to make its own independent facts as to jurisdiction." *Lentz v. Phil's Toy Store*, ___ N.C. App. ___, ___, 747 S.E.2d 127, 130 (2013); *see also Lucas v. Li'l Gen. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976).

The Commission concluded as a matter of law that Plaintiff's contract was not modified and that the last act necessary to create Plaintiff's original contract was made out of state, depriving the Industrial Commission of subject matter jurisdiction to hear Plaintiff's case. "Conclusions of law by the Industrial Commission are reviewable *de novo* by this Court." *Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 127, 532 S.E.2d 583, 585 (2000). "Under a *de novo* review, the court considers

the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quotation marks and citation omitted).

## III. Analysis

### a. Contract Modification Under Section 97-36

A contract modification is not explicitly referenced in Section 97-36, which grants the Commission subject matter jurisdiction over certain accidents that occur out of state. N.C. Gen. § 97-36 provides

> [w]here an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, then the employee or his dependents or next of kin shall be entitled to compensation (i) if the contract of employment was made in this State.[1]

Plaintiff argues that common law rules concerning modifications of contract apply. *See Lineberry v. Town of Mebane*, 219 N.C. 257, 258, 13 S.E.2d 429, 430 (1941) ("The common law, to the extent therein provided, is modified. Except as so modified it still prevails."); N.C. Gen. Stat. § 4-1 (2013) (declaring

---

[1] Plaintiff does not raise the other two provisions of the jurisdiction-granting statute, namely that U.S. Foods's principal place of business is in North Carolina or that Plaintiff's principal place of employment is in North Carolina.

portions of the common law not in conflict with the general statutes remain in full force).

We agree with Plaintiff and have consistently applied common law rules of contract to claims filed under the Workers' Compensation Act. *See, e.g.*, *Hollowell v. N.C. Dep't of Conservation & Devel.*, 206 N.C. 206, 208, 173 S.E. 603, 604 (1934); *Hojnacki v. Last Rebel Trucking, Inc.*, 201 N.C. App. 726, 689 S.E.2d 601, 2010 WL 10963 at *3-4 (2010) (unpublished) (applying common law principles of contract law, such as offer and acceptance, to a claim filed under the Workers' Compensation Act).

This Court has held that a lapse in employment and subsequent re-hiring via a "last act" made in North Carolina created a contract that was "made" in North Carolina for jurisdictional purposes under Section 97-36. *Baker v. Chizek Transp., Inc.*, 210 N.C. App. 490, 711 S.E.2d 207, 2011 WL 904271 at *4-5 (2011) (unpublished). Similarly, under the common law of contracts, a modification to the terms of a contract may create a new underlying contract that was "made" in North Carolina. *See, e.g.*, *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 457, 400 S.E.2d 476, 480 (1991) (holding that an

addendum letter was a new contract because it modified a prior lease agreement).

Section 97-36 also employs the phrase "employment contract," which encompasses a broader scope of employment than "contract of hire," a phrase that covers only the initial hiring of an individual. *Compare* N.C. Gen. Stat. § 97-36 *with* N.C. Gen. Stat. § 97-2(2) (2013) (using "contract of hire"). This broader expanse includes a contract modification, providing a basis for a contract being "made" in North Carolina under Section 97-36.

The dissent cites *Larson's Workers' Compensation Law* § 143.03(4) (2011) for the proposition that when "a contract has achieved an identifiable situs, that situs is not changed merely because the contract is modified in another state." While we acknowledge that *Larson's* is a learned treatise in this field, we must construe Section 97-36 using the long-standing canons of construction in this state which require a plain language approach to interpreting Section 97-36.

This Court's precedent identifies that a modified contract containing the required formation elements is a new contract. *See, e.g., NRC Golf Course, LLC v. JMR Golf, LLC*, ___ N.C. App. ___, ___, 731 S.E.2d 474, 480 (2012) ("Parties to a contract may

agree to change its terms; but the *new agreement*, to be effective, must contain the elements necessary to the formation of a contract." (emphasis added)). Like other newly formed contracts, a modified contract may be made in this state.

The General Assembly crafted Section 97-36 with a full view that the phrase "employment contract" contemplated both contracts of hire as well as modifications of existing contracts which, by long-standing precedent, are new agreements. *See id.; compare* N.C. Gen. Stat. § 97-36 *with* N.C. Gen. Stat. § 97-2(2) (using "contract of hire"). As such, we do not interject our own view of the legislature's intended meaning and instead apply existing precedent and the plain language of Section 97-36 to this question of first impression. *See Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992) ("The legislative purpose of a statute is first ascertained by examining the statute's plain language.").

Further, while the *Larson's* passage cites other state court decisions for the notion that a situs is not changed by contract modification, other jurisdictions have recognized explicitly that a contract modified within state borders confers jurisdiction. *See, e.g., Kilburn v. Grande Corp.*, 287 F.2d 371, 373-74 (5th Cir. 1961) (holding that Louisiana had jurisdiction

over a modified contract of employment where the original employment contract was formed in Texas, but additional consideration for employment was negotiated in Louisiana); *Kuzel v. Aetna Ins. Co.*, 650 S.W.2d 193, 195–96 (Tex. App. 1983) (holding Maryland had jurisdiction where the original contract of hire was formed in Texas, but a later contract modification was agreed to in Maryland).

The Commission held that modification of an existing contract does not fall within the scope of a contract "made" in Section 97-36. The lack of a bar against such use, this Court's precedents recognizing common law contract principles, and use of the phrase "employment contract" in Section 97-36 require a different result. Accordingly, a modification of an employment contract may be a proper basis to find a contract is "made" within North Carolina under Section 97-36.

**b. Whether Plaintiff's Contract was Modified**

Our next inquiry is whether Plaintiff's contract was actually modified under common law contract principles. The same tests for formation of contract apply to whether a modified contract is enforceable. *NRC Golf Course*, ___ N.C. App. at ___, 731 S.E.2d at 480 ("Parties to a contract may agree to change its terms; but the new agreement, to be effective, must contain

the elements necessary to the formation of a contract." (quotation marks and citation omitted)); *Corbin v. Langdon*, 23 N.C. App. 21, 26, 208 S.E.2d 251, 254 (1974). The three requisite elements to form an enforceable contract are offer, acceptance, and consideration. *Cap Care Grp., Inc. v. McDonald*, 149 N.C. App. 817, 822, 561 S.E.2d 578, 582 (2002). Consequently, we must consider whether each element exists to determine whether a modified employment contract was formed between Plaintiff and U.S. Foods.

"It is essential to the formation of any contract that there be mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 550, 613 S.E.2d 322, 327 (2005) (quotation marks and citation omitted); *see also Wooten v. S.R. Biggs Drug Co.*, 169 N.C. 64, 68, 85 S.E. 140, 142 (1915) (holding that "the one thing without which a contract cannot be made . . . is the assent of the parties to the agreement, the meeting of the minds upon a definite proposition"). As such, a contract modification must also have an offer of modified terms and acceptance on those terms. *Corbin*, 23 N.C. App. at 26, 208 S.E.2d at 255. At-will contracts may also be modified by the parties to form a new

contract. *Arndt v. First Union Nat. Bank*, 170 N.C. App. 518, 526, 613 S.E.2d 274, 280 (2005) ("The employer, in an at will relationship, can modify, unilaterally the future compensation to be paid to an employee. If the employer modifies the terms of an [employee] at will; and, the employee knows of the change, the employee is deemed to have *acquiesced* to the modified terms, if he continues the employment relationship.").

Here, Mr. Abernathy testified that the company met with displaced drivers after its merger with PYA Monarch. Mr. Abernathy said the company offered its displaced drivers jobs with the subsuming branches. U.S. Foods extended its offer for its employees to transfer branches at a company safety meeting in Charlotte. The alternative to transferring branches was to receive a severance package from U.S. Foods. Thus, Plaintiff had a choice: he could accept a transfer or he could cease employment and receive a severance package. This fundamental choice qualifies as a new offer under the traditional definition of a contract.

Plaintiff accepted the offer. At the Charlotte meeting where his new terms of employment were proposed, Plaintiff negotiated the details of his transfer with his supervisor. Specifically, Plaintiff requested that his trailers be dropped

near his home in Augusta. Plaintiff also completed paperwork at the Charlotte safety meeting to accept the transfer, although U.S. Foods's Charlotte human resources department had to approve the transfer before it was "official." From the foregoing, it is clear Plaintiff accepted a new offer modifying his existing at-will employment agreement.

Finally, there must also be consideration in support of the modified contract. *Clifford v. River Bend Plantation, Inc.*, 312 N.C. 460, 466, 323 S.E.2d 23, 27 (1984) ("It is established law that an agreement to modify the terms of a contract must be based on new consideration or on evidence that one party intentionally induced the other party's detrimental reliance." (citation and quotation marks omitted)). "Consideration sufficient enough to support a contract consists of any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee." *Fairfield Harbour Prop. Owners Ass'n, Inc. v. Midsouth Golf, LLC*, 215 N.C. App. 66, 75, 715 S.E.2d 273, 282 (2011) (quotation marks and citation omitted). This Court does not typically consider the adequacy of consideration, as "inadequate consideration, as opposed to the lack of consideration, is not sufficient grounds to invalidate a contract. In order to defeat

a contract for failure of consideration, the failure of consideration must be complete and total." *Harllee v. Harllee*, 151 N.C. App. 40, 49, 565 S.E.2d 678, 683 (2002) (citations omitted). Paying wages for labor constitutes consideration, and a change in the form of payment has been found to be sufficient consideration to form a contract. *Clyde Rudd & Associates, Inc. v. Taylor*, 29 N.C. App. 679, 682, 225 S.E.2d 602, 604 (1976) (holding that a change in the method of compensation met the consideration requirement of contract formation).

Here, when Plaintiff transferred to the Charlotte division, he transferred from a weight-based compensation system to a component pay system. This was a change in the method of compensation and ultimately netted Plaintiff an increase in pay. After transferring, Plaintiff's earnings increased. As such, a valuable benefit was conferred between both sides: U.S. Foods retained Plaintiff as an employee, Plaintiff retained a position driving trucks for U.S. Foods, and Plaintiff received increased pay as a result of the transfer.

As all three elements existed, a valid contract was formed between the parties via the modification of their previous employment contract. As a result, we must now consider whether the contract was "made" in North Carolina for purposes of

Section 97-36. For that inquiry, we turn to the "Last Act" analysis.

### c. "Last Act" Analysis

Section 97-36 ultimately grants the Commission jurisdiction only if the contract was "made" in North Carolina. To determine where a contract for employment was made, the Commission and North Carolina courts apply the "last act" test. *Murray v. Ahlstrom Indus. Holdings, Inc.*, 131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998). The "last act" test provides that "for a contract to be made in North Carolina, the final act necessary to make it a binding obligation must be done here." *Id.* (citation and quotation marks omitted).

In *Murray*, the plaintiff was initially hired at a plant in Tennessee, was laid off, and then was called at his North Carolina residence with an offer to work in Mississippi. *Id.* at 295, 506 S.E.2d at 725. Negotiations took place via telephone and the plaintiff accepted the offer while in North Carolina. *Id.* This Court held the last requisite act to form the binding employment contract occurred while the plaintiff was in North Carolina and that the Commission had jurisdiction to hear the plaintiff's workers' compensation claim. *Id.* at 297, 506 S.E.2d at 726.

Similar facts exist here. Plaintiff was offered and accepted a transfer with a different pay structure. Plaintiff filled out paperwork to that effect at a safety meeting in Charlotte. The transfer was explicitly described as not "final" or "official" unless approved by U.S. Foods's human resources department in Charlotte. Two signatures from human resources officers were provided in Charlotte to approve the transfer. As such, the last act to make the transfer binding occurred in Charlotte, where Plaintiff completed his transfer paperwork and where final approval by U.S. Foods's human resources department was provided.

## IV. Conclusion

Because we hold that Plaintiff and U.S. Foods modified Plaintiff's contract and that the final binding act occurred in North Carolina, we hold that Section 97-36 extends subject matter jurisdiction to Plaintiff's claim. As such, the opinion and award of the Industrial Commission is

Reversed and remanded for rehearing.

Judge STROUD concurs.

Judge DILLON dissents in a separate opinion.

NO. COA13-860

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

VINCENT BURLEY
    Employee, Plaintiff

    v.                                    From the North Carolina
                                        Industrial Commission
                                        I.C. No. X52202
U.S. FOODS, INC., Employer and
INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA, Carrier

    And

GALLAGHER BASSETT SERVICES, INC.,
    Third Party Administrators,

    Defendants.


    DILLON, Judge, dissenting.


    In 2000, Plaintiff Vincent Burley ("Employee"), a Georgia resident, entered into a contract of employment in South Carolina with Defendant U.S. Foods, Inc., ("Employer"), an Illinois-based company, to work as a truck driver. Employee was injured as the result of a work-related accident which occurred in Georgia in 2009. Employee filed this action seeking workers' compensation benefits in North Carolina; however, the Commission denied the claim, determining that it lacked jurisdiction to make an award. The sole statutory basis which Employee argues

on appeal gives the Commission jurisdiction over his claim is N.C. Gen. Stat. § 97-36(i), which provides jurisdiction for out-of-state accidents where "the contract of employment was made in this State[.]" Specifically, Employee argues he agreed to a modification to his contract of employment while attending a business meeting in Charlotte in 2002, and that this modification constituted a "contract of employment . . . made in this State[.]" *See id.* However, I disagree that this modification was sufficient to change the contract's situs from South Carolina to North Carolina; and, therefore, I would affirm the Commission's conclusion that it lacked jurisdiction in this matter. Accordingly, I respectfully dissent.

Employee was initially assigned to Employer's Columbia, South Carolina drop-yard. In 2002, Employer merged with another company, which resulted in the closing of Employer's Columbia drop-yard. However, Employee's employment was never severed. Rather, the parties came to an agreement during a meeting in Charlotte whereby oversight of his job was transferred to Employer's Charlotte division and his compensation was increased. As the majority points out, though, Employee's "job title and responsibilities did not change."

As the majority notes, whether an out-of-state employment contract modified in this State constitutes a "contract of employment . . . *made* in this State" for purposes of conferring jurisdiction in the Commission under N.C. Gen. Stat. § 97-36(i) for an out-of-state accident has never been directly addressed by a North Carolina appellate court. (Emphasis added.) I believe that, for purposes of conferring jurisdiction for an out-of-state accident based on where the contract of employment was "made[,]" the General Assembly intended that only one state be considered an employment contract's situs, namely, where the contract "was made[,]" and not also be every state where the contract might have been "modified" over the course of an employee's tenure.[2] I believe that if the General Assembly had intended to include states where contracts of employment were

---

[2] The scope of my dissent is based on the facts of this case. I recognize that there could be situations where a modification may be so significant that it could be deemed that a new contract of employment was "made[,]" thereby changing the situs of the employment contract. For example, in this case had Employee accepted an offer to move to Employer's Illinois headquarters to manage one of its divisions, it might be said that – for purposes of conferring jurisdiction under N.C. Gen. Stat. § 97-36(i) - the parties "made" a new contract of employment. However, I do not believe the changes that were actually made at the Charlotte meeting to Employee's contract – where he remained employed and his role did not fundamentally change – rise to the level of making of new contract of employment.

also modified, and not simply made, within the jurisdictional reach of the Commission, it could have so provided by including the phrase "or modified" in the language of N.C. Gen. Stat. § 97-36(i). "Once a contract has achieved an identifiable situs, that situs is not changed merely because the contract is modified in another state[.]" *Larson's Workers' Compensation Law* § 143.03[4] (2013) (citing *Crawford v. Trans World Airline*, 27 N.J. Super. 567, 99 A.2d 673 (1953); *Tobin v. Rouse*, 118 Vt. 40, 99 A.2d 617 (1953); *United Airlines v. Industrial Commission*, 96 Ill. 2d 126, 449 N.E.2d 119 (1983)).[3]

Following the majority's reasoning, the Commission gains jurisdiction over an out-of-state contract of employment if the modification of any contract term is agreed to by one of the parties while that party happens to be in North Carolina; and, further, the Commission *loses* jurisdiction over a contract of employment made in North Carolina if the modification of any term of that North Carolina contract is agreed to by one of the parties while that party happens to be in another state. I

---

[3] Though an opinion stated in *Larsons'* is not binding authority on this Court, this treatise has been cited with approval by our courts on a number of occasions, *see, e.g.*, *Shaw v. U.S. Airways*, 362 N.C. 457, 461, 665 S.E.2d 449, 452 (2008); *Gore v. Myrtle/Mueller*, 362 N.C. 27, 36, 683 S.E.2d 404, 406-07 (2007); *Taft v. Brinley's*, __ N.C. App. __, __, 738 S.E.2d 741, 744-45 (2013); and I find the above-quoted statement contained in *Larsons'* concerning the issue in this case to be persuasive.

disagree with this reasoning and do not believe that our General Assembly intended that - for purposes of conferring jurisdiction based on contracts of employment "made" - a contract of employment is deemed made, *not* where the employer-employee relationship is established, but rather where *any* term of the employment agreement is last modified. Accordingly, I would vote to affirm the decision of the Commission that it lacked jurisdiction to award benefits to Employee.