IN THE SUPREME COURT OF NORTH CAROLINA

No. 123A14

FILED 25 SEPTEMBER 2015

VINCENT BURLEY, Employee

v.

U.S. FOODS, INC.,
            Employer,

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
            Carrier

(GALLAGHER BASSETT SERVICES, INC., Third-Party Administrator)


Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 756 S.E.2d 84 (2014), reversing an opinion and award filed on 28 June 2013 by the North Carolina Industrial Commission, and remanding for rehearing.  Heard in the Supreme Court on 17 March 2015.


> *Sumwalt Law Firm, by Vernon Sumwalt, for plaintiff-appellee.*
>
> *McAngus, Goudelock & Courie, P.L.L.C., by Raymond J. Williams, III and Jordan Benton, for defendant-appellants.*
>
> *Hedrick Gardner Kincheloe & Garofalo, LLP, by Nicole C. Shoemaker and M. Duane Jones, for North Carolina Association of Defense Attorneys, amicus curiae.*


JACKSON, Justice.


In this case we consider whether an employment contract was "made in this State" when it was formed in South Carolina and allegedly modified in North Carolina.  N.C.G.S. § 97-36 (2013).  We conclude that the modification that occurred

here did not alter the state in which the contract was made. Accordingly, we reverse the decision of the Court of Appeals.

Plaintiff is a resident of Augusta, Georgia. In May 2000, U.S. Foods, Inc. extended plaintiff an offer of employment, which plaintiff accepted by signing the offer letter. According to plaintiff's testimony, he was in Fort Mill, South Carolina, when he signed the offer letter. Subsequently, plaintiff began working for U.S. Foods as a delivery truck driver. Plaintiff's job responsibilities included driving a planned route with stops in Georgia and South Carolina, but no travel in North Carolina was involved.

As the result of a merger with another company in 2002, U.S. Foods ceased operating in the Columbia, South Carolina location where plaintiff was assigned. U.S. Foods then gave plaintiff the choice either to terminate his employment and receive a severance package or to have supervision of his employment transferred to Charlotte, North Carolina, or Lexington, South Carolina. Plaintiff elected to transfer to the company's Charlotte division, and the transfer was approved by U.S. Foods' Human Resources Department in Charlotte. Throughout the transfer, plaintiff was employed by U.S. Foods continuously. Thereafter, he performed the same job, and his title and responsibilities did not change. Plaintiff made deliveries to different customers after the transfer, and he earned more money because of a change in the way his pay was calculated. But although plaintiff's supervision was transferred to

Charlotte, plaintiff never had a route that involved any deliveries in North Carolina during his employment with U.S. Foods.

On 23 September 2009, plaintiff received a back injury during a delivery in Georgia. Plaintiff's claim for benefits was accepted by defendants pursuant to the Georgia Workers' Compensation Act, and plaintiff began receiving disability and medical compensation according to Georgia law. On 8 July 2011, plaintiff filed a claim for benefits with the North Carolina Industrial Commission. After a hearing on 17 April 2012, Deputy Commissioner Philip A. Baddour, III concluded that the Commission did not have subject matter jurisdiction over plaintiff's claim. Plaintiff appealed to the Full Commission, which affirmed Deputy Commissioner Baddour's ruling.

Plaintiff appealed, and in a divided opinion, the Court of Appeals reversed, holding that the Commission has jurisdiction over plaintiff's claim. *Burley v. U.S. Foods, Inc.*, ___ N.C. App. ___, ___, 756 S.E.2d 84, 90 (2014). The majority concluded that plaintiff's transfer to U.S. Foods' Charlotte division involved a modification of plaintiff's employment contract, *id.* at ___, 756 S.E.2d at 90, and that such a modification "may be a proper basis to find a contract is 'made' within North Carolina" for purposes of establishing the jurisdiction of the Commission pursuant to N.C.G.S. § 97-36, *id.* at ___, 756 S.E.2d at 88. Judge Dillon dissented, maintaining that modification of plaintiff's existing contract, in light of the facts presented here, is

insufficient to confer jurisdiction upon the Commission. *Id.* at ___, 756 S.E.2d at 91 (Dillon, J., dissenting). Based upon the dissent, defendants appealed to this Court as of right pursuant to N.C.G.S. § 7A-30(2).

On appeal defendants argue that once an employment contract has achieved an identifiable situs, that situs is not changed by a subsequent modification of the contract in another state. Defendants therefore contend that, notwithstanding the alleged modification in the case *sub judice*, plaintiff's employment contract was not made in North Carolina and does not establish the Commission's jurisdiction pursuant to section 97-36. We agree.

Generally, appellate review of the Commission's decisions is limited to "whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (alterations in original) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)). But "the Commission's findings of jurisdictional fact are *not* conclusive on appeal, even if supported by competent evidence." *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000) (citing, *inter alia*, *Lucas v. Li'l Gen. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976)). Accordingly, this Court must review the evidence and make findings of fact independently. *Id.* at 637, 528 S.E.2d at 904 (quoting *Lucas*, 289 N.C. at 218, 221 S.E.2d at 261). "The

Commission's conclusions of law are reviewed *de novo*." *McRae*, 358 N.C. at 496, 597

S.E.2d at 701 (citing *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 534, 491

S.E.2d 678, 681 (1997), *disc. rev. denied*, 347 N.C. 671, 500 S.E.2d 86 (1998)).

Section 97-36 specifies when an employee may be entitled to compensation for

an accident that occurs during employment outside of North Carolina. This statute

states in pertinent part:

> Where an accident happens while the employee is
> employed elsewhere than in this State and the accident is
> one which would entitle him or his dependents or next of
> kin to compensation if it had happened in this State, then
> the employee or his dependents or next of kin shall be
> entitled to compensation (i) if the contract of employment
> was made in this State, (ii) if the employer's principal place
> of business is in this State, or (iii) if the employee's
> principal place of employment is within this State . . . .

N.C.G.S. § 97-36. Because the only issue addressed by the dissenting opinion

concerns whether the Court of Appeals correctly concluded that plaintiff's

employment contract was "made in this State," *Burley*, ___ N.C. App. at ___, 756

S.E.2d at 91; *see also id.* at ___ n.1, 756 S.E.2d at 87 n.1 (majority), we consider only

that basis for compensation pursuant to section 97-36, *see* N.C. R. App. P. 16(b).

"Under North Carolina law, a contract is made in the place where the last act

necessary to make it binding occurred." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318

N.C. 361, 365, 348 S.E.2d 782, 785 (1986) (citing *Goldman v. Parkland of Dallas, Inc.*,

277 N.C. 223, 227, 176 S.E.2d 784, 787 (1970)); *see also Thomas v. Overland Express,*

*Inc.*, 101 N.C. App. 90, 96, 398 S.E.2d 921, 925-26 (1990), *disc. rev. denied*, 328 N.C. 576, 403 S.E.2d 522 (1991).

Although this case involves a matter of first impression in North Carolina, courts of several other states that have considered similar factual situations long have held that a modification of a contract did not change the location where the contract was made. In *Sims v. Truscon Steel Co.*, 343 Mo. 1216, 126 S.W.2d 204, *cert. denied*, 307 U.S. 646, 59 S. Ct. 1045, 83 L. Ed. 1526 (1939), a company hired a worker via a contract made in Missouri, but later argued that a new contract was entered into by correspondence between the employee, who was then working in Kansas, and the employer's Illinois office. *Id.* at 1220, 126 S.W.2d at 206. The Missouri Supreme Court rejected this contention, concluding that, although the correspondence resulted in "additional duties and additional pay" for the employee, there still was "only one contract of employment": the original contract made in Missouri. *Id.* at 1224, 126 S.W.2d at 208. Similarly, in *Selser v. Bragmans Bluff Lumber Co.*, 146 So. 690 (La. Ct. App. 1933), a Louisiana appellate court determined that a "change in [the employee's] position and the increase of his salary" that occurred in another jurisdiction "in no way abrogated or set aside" the remaining terms of the original contract. *Id.* at 696. Furthermore, in *Benguet Consolidated Mining Co. v. Industrial Accident Commission*, 36 Cal. App. 2d 158, 97 P.2d 267 (1939), a California appellate court concluded that a three-year contract of hire originally made in California "was still in effect in spite of the changes in duties and salary agreed upon in the

Philippines" and remained binding even after subsequent mutual agreements made in the Philippines extended the worker's employment beyond the time specified in the original contract. *Id.* at 167, 97 P.2d at 272. Consistent with these decisions, *Larson's Workers' Compensation Law* states that "[o]nce the contract has achieved an identifiable situs, that situs is not changed merely because the contract is modified in another state, as when there is a change in salary or other benefits made in the second state." 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 143.03[4], at 143-22 (2012) (citing *United Airlines, Inc. v. Indus. Comm'n*, 96 Ill. 2d 126, 449 N.E.2d 119 (1983); *Crawford v. Trans World Airline*, 27 N.J. Super. 567, 99 A.2d 673 (1953); *Tobin v. Rouse*, 118 Vt. 40, 99 A.2d 617 (1953)). We find this authority persuasive.

*Kuzel v. Aetna Insurance Co.*, 650 S.W.2d 193 (Tx. App. 1983), which plaintiff references and which the Court of Appeals cited, does not contradict this result. The court in *Kuzel* concluded that, based upon the specific facts before it, the initial agreement regarding the plaintiff's employment in that case "was no more than preliminary negotiations," while "[a] contract [was] established [in another state] when agreement [was] reached on all terms, and the preliminary agreements [were] . . . incorporated into the final offer and acceptance." *Id.* at 195. As a result, *Kuzel* did not involve a modification of an existing contract, but rather concerned preliminary negotiations culminating in a subsequent final written employment

agreement.  Accordingly, the court's analysis in *Kuzel* is not persuasive in the case *sub judice*.

Although the Fifth Circuit in *Kilburn v. Grande Corp.*, 287 F.2d 371 (5th Cir. 1961), concluded that a modification *may* create a new contract, that decision was based in part upon the premise that, because the employee's "salary was to be paid on an hourly basis," thus indicating a less than " 'permanent' type of employment," whatever employment contract existed "had life on a pay-period-to-pay-period basis, and . . . a new contract was impliedly made each time that [the employee] reported to work and was given work following a pay period." *Id.* at 373.  Because North Carolina law looks to "the final act necessary to make [the contract] a binding obligation," *Thomas*, 101 N.C. App. at 96, 398 S.E.2d at 925, and does not imply the creation of a new contract after each pay period, we find *Kilburn* unpersuasive.[1]  *See also, e.g.*, *Murray v. Ahlstrom Indus. Holdings, Inc.*, 131 N.C. App. 294, 296-97, 506 S.E.2d 724, 726 (1998) (citing *Thomas* and concluding that a contract for employment was complete when the plaintiff accepted the employer's offer in North Carolina, even though the plaintiff completed the necessary paperwork in another state, where he was assigned to perform his work).

---

[1]  Moreover, we note that the original agreement in *Kilburn* was never reduced to writing by the parties, which further distinguishes *Kilburn* from the instant case.  The lack of a written agreement led the Fifth Circuit to find the absence of "an enforceable contract of employment for any period of time in existence when [the employee] moved to [the other state]." *Kilburn*, 287 F.2d at 373.

Ultimately, section 97-36 authorizes compensation pursuant to North Carolina law if an individual's employment contract was "made" in North Carolina—the statute does not include the word "modified." After interpreting this statute in light of its plain language and upon consideration of decisions from other jurisdictions, we conclude that section 97-36 does not apply to a contract initially made in another state and subsequently modified in North Carolina.

Here the evidence in the record establishes that when plaintiff began working for U.S. Foods, his employment contract was not made in North Carolina. After being hired in South Carolina in 2000, plaintiff worked continuously for U.S. Foods and never left the job until he was terminated following his injury. Plaintiff's 2002 transfer involved administrative changes, new customers, and increased pay, but his job title and responsibilities did not change. Plaintiff's supervisor stated that plaintiff had the "[s]ame job" following the transfer. In addition, although plaintiff's pay eventually increased by a substantial amount, much of the increase occurred between 2004 and 2005, long after the 2002 transfer at issue here. Plaintiff testified that he was not informed about this change in salary before its implementation, suggesting that it was not part of how he understood the transfer process at the time it was taking place. We decline to hold that this internal transfer of supervision, which essentially allowed plaintiff to continue working for U.S. Foods in the same capacity throughout the merger, established a new employment contract. Accordingly, the decision of the Court of Appeals is reversed.

REVERSED.

Justice HUDSON dissenting.

The majority holds that an employment contract modified in North Carolina does not qualify as one "made" in North Carolina for purposes of conferring subject matter jurisdiction on the North Carolina Industrial Commission, even when the modifications to the employment relationship are substantial and where it is undisputed that it was impossible for the employment relationship to continue on the original terms. In my view, this holding contradicts the long-standing rule that North Carolina courts must liberally construe the Workers' Compensation Act in favor of providing relief to workers injured in the scope of their employment. Accordingly, I respectfully dissent.

The statute at issue here, N.C.G.S. § 97-36, governs when an employee may be entitled to compensation for a work-related accident that occurs outside North Carolina. Section 97-36 provides in relevant part:

> Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, then the employee or his dependents or next of kin shall be entitled to compensation . . . if the contract of employment was made in this State . . . .

N.C.G.S. § 97-36 (2013). In interpreting this provision, it is well settled that the Workers' Compensation Act, including section 97-36, "must necessarily be viewed with liberality in order to accomplish its purpose[ ]" of providing compensation to

employees injured during the course and within the scope of their employment. *Essick v. City of Lexington*, 232 N.C. 200, 208, 60 S.E.2d 106, 112 (1950); *see also Johnson v. Asheville Hosiery Co.*, 199 N.C. 38, 40, 153 S.E. 591, 593 (1930) ("It is generally held by the courts that the various Compensation Acts of the Union should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation."). The question presented here is whether a contract of employment qualifies as a contract "made" in North Carolina when an employee is given a choice between termination and continuing the relationship under terms so significantly different that the arrangement amounts, in effect, to a new contract. I conclude that, on the facts presented here and against that liberal interpretive backdrop, it does.

Here, plaintiff first accepted an offer of employment with defendant U.S. Foods in May 2000. For two years, he worked as a delivery truck driver with an assigned drop yard in Columbia, South Carolina and a planned route in the Augusta, Georgia area. The customers to whom plaintiff made deliveries included health care facilities, convenience stores, and restaurants. While there was some variation among these customers, most of them remained the same during the time plaintiff had that route.

In 2002, U.S. Foods merged with another company, PYA Monarch, and defendant elected to close the Columbia drop yard. Plaintiff, like many other employees based out of the Columbia location, was given a choice: He could either

accept termination and a severance package, or he could transfer to a division based in Lexington, South Carolina, or one located in Charlotte, North Carolina. Because the Columbia drop yard was closing, the parties did not have the option of continuing the employment relationship as it had existed up to that point. Faced with this decision, plaintiff chose transfer to the Charlotte-based division of the company. Plaintiff also negotiated for and received an additional benefit; specifically, plaintiff and defendant agreed that while plaintiff worked out of the Charlotte-based division, U.S. Foods would deliver plaintiff's loaded trailer to him in Augusta, Georgia. The company's Human Resources Department, which was also located in Charlotte, approved the transfer in October 2002, thereby finalizing the new agreement.

Once he came under the supervision of the Charlotte-based division of the company, plaintiff's employment changed in several other ways as well. As plaintiff described in his testimony before the Industrial Commission, he drove a new route and his "customers changed completely." While he had previously made deliveries to health care facilities, convenience stores, and restaurants, the "bulk" of plaintiff's deliveries when he was based in Charlotte were to chain restaurants such as Sonic, KFC, Subway, and IHOP. In addition, the method by which plaintiff's pay was calculated was changed. When he was based in South Carolina, plaintiff was paid based on an hourly weight-based commission system, under which he earned approximately $400 to $500 per week. In North Carolina, however, he was first paid

an hourly rate, then under a component-based system.[2]  Under the component-based system, plaintiff eventually earned more than twice as much as under the commission-based system, up to $1400 per week.

In sum:  When U.S. Foods merged with PYA Monarch, plaintiff was faced with either termination or transfer to a division based in another State.  Plaintiff chose transfer to North Carolina and bargained for the inclusion of specific contractual terms under the new arrangement.  Upon approval by defendant's Charlotte-based Human Resources Department, plaintiff had a new supervisor stationed in a new state.  Plaintiff then drove a new route, served new customers, and earned significantly more money through the use of a new method of calculating his pay.  On the whole, it appears that the only characteristics of the employment relationship that remained the same were plaintiff's general duties and title as a delivery driver, and the name of his employer.

In my view, then, this was no mere modification, as when an employee accepts a modest pay increase in exchange for taking on modest new responsibilities.  Rather, I conclude that the required break from the old employment arrangement, paired with significant changes in how plaintiff's employment would proceed moving forward, warrants treating this arrangement as a new contract—one finalized when

---

[2] Under the commission system, delivery drivers' wages were based primarily on the weight of the cargo they delivered.  In contrast, under the component system, in addition to receiving a base pay, drivers are paid based on a number of factors including a safety bonus, the hours worked, and the number of stops and items of cargo.

defendant's Human Resources Department in Charlotte approved the arrangement. Based on these facts, and in light of the requirement that we liberally construe the Workers' Compensation Act in favor of awarding benefits, *see, e.g.*, *Essick*, 232 N.C. at 208, 60 S.E.2d at 112, I would hold that the contract in place when plaintiff suffered his work-related injury on 23 September 2009 was a contract "made" in North Carolina for purposes of N.C.G.S. § 97-36, and that the North Carolina Industrial Commission has jurisdiction over plaintiff's claim.  On this basis, I would affirm the decision of the Court of Appeals.  Therefore, I respectfully dissent.

Justices BEASLEY and ERVIN join in this dissenting opinion.